**UNIROYAL GOODRICH TIRE COMPANY, Plaintiff,**

v.

**MUTUAL TRADING CORPORATION, Mohammad Shafiq, John P. Hauper and Richard K. Germano, Defendants.**

**No. 90 C 02370.**

United States District Court, N.D. Illinois, E.D.

Sept. 27, 1990.

Champ W. Davis Jr., Julia D. Mannix, Lamet Kanwit & Davis, Chicago, Ill., for plaintiff.

Jay A. Canel, Peter M. King, Canel Davis & King, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Uniroyal Goodrich Tire Co. ("Uniroyal Goodrich") has sued Mutual Trading Corp. ("Mutual Trading"), Mohammad Shafiq ("Shafiq"), John P. Hauper ("Hauper"), and Richard K. Germano ("Germano") under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1988) ("RICO"), and various pendent state claims. Mutual Trading, Shafiq, and Hauper now move to dismiss. For the reasons set forth below, we grant that motion only with respect to one aspect of the RICO allegations, and to the count seeking recovery on an "account stated" theory. We otherwise deny the motion to dismiss.

### I. Allegations

Uniroyal Goodrich, a tire manufacturer and retailer, seeks damages for losses sustained as a result of the defendants' alleged fraudulent activity. Mutual Trading is an Illinois corporation that did business with Uniroyal Goodrich between 1982 and 1990. Shafiq is Mutual Trading's president and sole shareholder; Hauper is Mutual Trading's vice-president and director of finance. Germano worked for Uniroyal Goodrich in its international sales division from 1970 until 1990; he has not yet appeared in this matter.

Specifically, Uniroyal Goodrich lists seven "unlawful schemes" allegedly perpetrated by defendants. They maintain defendants: 1) submitted credit invoices for non-existent billboard advertising in West Africa; 2) claimed a "volume discount" for which they did not qualify; 3) purchased tires from Uniroyal Goodrich at unauthorized prices; 4) took advantage of wrongfully waived interest charges; 5) made false claims of tire defects and received warranty credits for unblemished tires; 6) engaged in "short shipping" tactics; and 7)

wrongfully requested "downgrade credits" for certain tire shipments.

## II. Rule 9(b) Particularity

Defendants argue that Uniroyal Goodrich's RICO allegations must be dismissed for failure to plead with the particularity required by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 9(b) ("[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").

Rule 9(b)'s requirements are certainly applicable to fraud claims in civil RICO complaints. *See Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 405 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). These requirements, however, are not absolute or unbounded; defendants need not be given a "pretrial memorandum containing all the evidentiary support for plaintiffs' case." *Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y.1980); *accord Bruss Co. v. Allnet Communication Servs., Inc.*, 606 F.Supp. 401, 405 (N.D.Ill.1985) ("plaintiff ... need not plead detailed evidentiary matters").

■ Uniroyal Goodrich's complaint need only set forth "a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975). This the plaintiff's complaint has done; it "adequately details, in broad strokes, the nature and essential factual elements of the alleged fraud.... [T]he defendants are not left guessing as to the outlines of the fraud, its purposes, or the critical facts...." *Adair v. Hunt Int'l Resources Corp.*, 526 F.Supp. 736, 744 (N.D.Ill.1981).

■ Defendants correctly point out that, generally speaking, a complaint naming multiple defendants must provide adequate notice of the role each individual defendant allegedly played in the scheme. *Lincoln Nat'l Bank v. Lampe*, 414 F.Supp. 1270, 1278 (N.D.Ill.1976); *see also Adair*, 526 F.Supp. at 744–45. Where the defendants are all "corporate insiders," however, the general rule does not apply. *Banowitz v. State Exchange Bank*, 600 F.Supp. 1466, 1469 (N.D.Ill.1985). The attribution of specific fraudulent acts to specific defendants is unnecessary where the individual defendants are insiders if, as here, "the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations." *Id.* (citing *Pellman*, 503 F.Supp. at 111); *accord Swanson v. Wabash, Inc.*, 577 F.Supp. 1308, 1321 (N.D.Ill.1983); *Helfant v. Louisiana & S. Life Ins. Co.*, 82 F.R.D. 53, 57 (E.D.N.Y.1979); *Barotz v. Monarch General, Inc.*, [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,933 (S.D.N.Y. 1975). Because Shafiq and Hauper are clearly insiders in Mutual Trading, Uniroyal Goodrich need not specifically attribute fraudulent acts to them beyond the attributions already contained in its complaint.

■ Related to defendants' particularity argument is the contention that allegations in the complaint "made *solely* on 'information and belief' " must be disregarded. Defendants' Memorandum of Law at 3 (emphasis added) (citing, *inter alia, Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir. 1962)); Reply Memorandum at 4 (same). In *Altenburg*, the court dismissed plaintiff's complaint because it alleged fraud "on information and belief only and without any statement of or reference to any facts upon which such beliefs supposedly rest." *Altenburg*, 297 F.2d at 519. Here, Uniroyal Goodrich does adequately refer to the facts upon which its fraud allegations rest; to dismiss the "information and belief" allegations simply because its counsel included that phrase in particular paragraphs of the complaint is entirely inappropriate.

Similarly, defendants fail to show precisely why Uniroyal Goodrich has not alleged sufficient acts of mail and wire fraud in support of its RICO counts. The complaint itself alleges fraudulent activity by Mutual Trading and its top officers, Shafiq and Hauper. The alleged success of that activity depended, according to Uniroyal Goodrich, on a confederation between the defendants and Germano, a key Uniroyal Goodrich employee. The two companies

had a business relationship stretching over several years.

As such, the mailings alleged could easily have been "part of the execution of the fraud...." *Schmuck v. United States*, 489 U.S. 705, ——, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734, *reh'g denied*, —— U.S. ——, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989). Indeed, as Uniroyal Goodrich notes, the federal mail fraud statute reaches mailings that are " 'incident to an essential part of the scheme' " or are merely " 'a step in [the] plot.' " *Id.* (quoting *Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916)). Further, " '[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or when such use can be reasonably foreseen, even though not actually intended, then he "causes" the mails to be used.' " *United States v. Bonansinga*, 773 F.2d 166, 168 (7th Cir.1985) (quoting *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954)), *cert. denied*, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986).

The wire fraud allegations, while certainly less detailed than the mail fraud allegations, also follow, in part, from the nature of the Uniroyal Goodrich–Mutual Trading relationship. In the eight years the two parties did business together, interstate telephone wires were occasionally, if not frequently, used. Uniroyal Goodrich alleges, in fact, that many phone calls over the years "were for the purpose and with the intent of effectuating the scheme to defraud." Complaint ¶ 10. The federal wire fraud statute implicates wire transmissions, like telephone communications, used to execute a scheme to defraud; it is "not necessary that the use of the telephone be central or essential to the scheme." *United States v. Brennan*, 629 F.Supp. 283, 293 (E.D.N.Y.), *aff'd*, 798 F.2d 581 (2d Cir.1986).

Defendants' motion to dismiss, as grounded in Rule 9(b)'s particularity requirements, is denied.

## III.  RICO Counts

### A.  Pattern of Racketeering Activity

■ Uniroyal Goodrich must prove that defendants engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(a)–(c). A " 'pattern of racketeering activity' requires at least two acts of racketeering activity" within a ten-year time period. § 1961(5). Acts of mail and wire fraud constitute racketeering activity under RICO. § 1961(1)(B).

Two significant Supreme Court decisions have endeavored to flesh out just what a plaintiff must show to satisfy the "pattern of racketeering activity" requirement. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (" 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' "); *see also H.J., Inc. v. Northwestern Bell Tel. Co.*, —— U.S. ——, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989) ("Congress intend[ed] a more stringent requirement than proof simply of two predicates, but also envision[ed] a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity").

Defendants' argument to dismiss for failure to allege a "pattern of racketeering activity" has two prongs. First, they allege that Uniroyal Goodrich "has failed to allege with particularity that either [Shafiq or Hauper] committed at least two predicate acts." Defendants' Memorandum of Law at 10. Defendants recognize that this contention depends on whether Uniroyal Goodrich's complaint satisfies Rule 9(b). Reply Memorandum at 7. It does, as discussed above, and so this part of the argument fails.

Second, defendants maintain that Uniroyal Goodrich's complaint alleges "only a single closed-end scheme," with a "single victim" and a "single injury." Defendants' Memorandum of Law at 6–7. This, they suggest, is in contravention of the general Seventh Circuit rule that an allegation of a single scheme harming one victim and causing a single injury does not state a

"pattern of racketeering activity." *See, e.g., Jones v. Lampe,* 845 F.2d 755, 758 (7th Cir.1988).

Of course, "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975–76 (7th Cir.1986). A fact-specific inquiry, including "the number and variety of predicate acts," the time span over which they were committed, "the number of victims, the presence of separate schemes and the occurrence of distinct injuries," determines whether the "pattern of racketeering activity" standard has been met in each case; no single factor is "necessarily determinative." *Id.; see also, SK Hand Tool Corp. v. Dresser Indus., Inc.,* 852 F.2d 936, 940 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989).

Although relatively rare, a pattern of racketeering activity can be established where one victim of a single scheme to defraud suffers the repeated infliction of economic injury. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1305 (7th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); *accord Appley v. West,* 832 F.2d 1021, 1027–28 (7th Cir.1987). Uniroyal Goodrich, the single victim and plaintiff here, may or may not have been subjected to a single scheme by the defendants. If it was, its situation is quite analogous to the plaintiff's in *Liquid Air.*

In that case, Liquid Air alleged that D & R Welding Supply Co. ("D & R") and its shareholders systematically defrauded it via a series of fraudulent mail and wire transmissions; fake shipping orders made it appear that D & R had returned more than 3,000 leased gas cylinders when, in fact, none had been returned. *Liquid Air Corp.,* 834 F.2d at 1300. D & R "enlisted the aid" of a Liquid Air employee to help them falsify the pertinent paperwork. *Id.* The court found a "pattern of racketeering activity" in the repeated injury caused by the defendants. *Id.* at 1304–05.

Uniroyal Goodrich has alleged that it suffered a similar "repeated infliction of economic injury," and that it was a victim of systematic illegal conduct that continued from 1987 until its association with Germano ended in early 1990. This is sufficient to show a pattern of racketeering activity under *Liquid Air* and *Appley.*

### B. Constitutionality of RICO's Pattern Requirement

■ Defendants urge this court to take heed of Justice Scalia's concurring opinion in *H.J., Inc.,* 109 S.Ct. at 2906 (Scalia, J., concurring), and find RICO's "pattern of racketeering activity" requirement unconstitutionally vague. Justice Scalia, lamenting the fact that "[n]o constitutional challenge" to that key phrase was before the Court, noted that "the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance." *Id.* at 2909 (Scalia, J., concurring). This circumstance, he concluded, "bodes ill for the day when that challenge is presented." *Id.*

Thus far, only one court has taken the plunge and held RICO unconstitutional as applied to certain defendants. *Firestone v. Galbreath,* 747 F.Supp. 1556, 1581 (S.D. Ohio 1990) (pattern requirement unconstitutionally vague as to "isolated and sporadic" predicate acts stemming from "a dispute between family members concerning whether certain property should have remained in a relative's estate"). We find in the instant matter allegations that, if proved, would satisfy the pattern requirement "regardless of the narrowness of the interpretation placed upon the term 'pattern,' " and, perhaps just as importantly, a factual scenario quite unlike a family dispute—a scenario, in fact, likely to be among those "typical situations which Congress envisioned as being within RICO's scope of coverage." *Id.* at 1580–1581. We decline to follow *Firestone*'s lead, and find RICO's pattern requirement constitutional as to Mutual Trading, Shafiq, and Hauper.

## C. § 1962(a)

Uniroyal Goodrich's § 1962(a) [1] allegations are satisfactorily pleaded as against Mutual Trading, Shafiq, and Hauper. Defendants assert two deficiencies: 1) Mutual Trading has not been alleged to be a "person" subject to § 1962(a) (and no liability has been predicated on a *respondeat superior* theory); and 2) Uniroyal Goodrich does not allege that it sustained injury from the investment or use of racketeering activity proceeds.

Uniroyal Goodrich, it is true, does not maintain that Mutual Trading is a "person," but that does not mean that Mutual Trading, alleged to be an "enterprise," Complaint ¶ 54, is immune to § 1962(a) liability. Indeed, unlike § 1962(c), § 1962(a) "contains no language indicating that the enterprise itself cannot be a liable 'person.'" *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7th Cir.) (citing *Haroco*, 747 F.2d at 402), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); *see also Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397, 401–02 (7th Cir.1985) (adopting *Haroco*'s analysis and reversing dismissal of § 1962(a) claim). *Compare* § 1962(a) ("It shall be unlawful for any person....") *with* 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise....") [2] By its terms, § 1962(c) permits no overlap between persons and enterprises; an enterprise cannot associate with or be employed by itself. *D & S Auto Parts*, 838 F.2d at 967 (citing *Haroco*, 747 F.2d at 401–02). [3]

The distinction between § 1962(c) and § 1962(a) is designed to balance competing policy considerations. *Haroco*, 747 F.2d at 401. On the one hand, Congress could not have intended to immunize a defendant corporation perpetrating RICO activity "while subjecting only the sidekicks to RICO's severe penalties." *Id.* On the other hand, it would be draconian to hold a corporation liable merely because it was the "passive instrument or even a victim of the racketeering activity." *Id.*

█ Deep corporate pockets are not necessarily shielded from RICO liability simply because § 1962(c) permits no overlap between persons and enterprises. The less restrictive language of § 1962(a) imposes liability upon an enterprise which perpetrates illegal activity, but it will not similarly penalize "an unwitting conduit of its employees' RICO violations." *D & S Auto Parts*, 838 F.2d at 967. In short, a corporation-enterprise may be sanctioned under § 1962(a) for unlawful conduct. *Id.* It is thus irrelevant that Uniroyal Goodrich did not specifically allege that Mutual Trading was a "person" subject to § 1962(a); under § 1962(a) the liable person may be a corporation-enterprise "using the proceeds of a pattern of racketeering activity in its activities." *Haroco*, 747 F.2d at 402.

█ Defendants' other concern with Uniroyal Goodrich's § 1962(a) claim is essentially based on § 1964(c)'s proximate cause requirement. In order to state a claim under RICO, plaintiff must assert an injury "by reason of a violation of section 1962." § 1964(c). In a § 1962(a) context, recovery is not permitted when the allegation is merely that plaintiff's injury stemmed from defendant's pattern of racketeering; plaintiff, instead, must allege injury "by reason of defendant's use or investment of the

---

1. In relevant part, § 1962(a) provides:
   (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment ór operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

2. In its entirety, § 1962(c) reads:
   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

3. Apparently understanding the differences between § 1962(a) and § 1962(c), Uniroyal Goodrich does not allege its § 1962(c) claims against Mutual Trading. Complaint ¶¶ 47–55 (Count II alleged only against Shafiq and Hauper). The enterprise must be distinct from the person for § 1962(c) purposes. *Haroco*, 747 F.2d at 401–02.

income allegedly derived from a pattern of racketeering." *Grove Fresh Distribs., Inc. v. Flavor Fresh Foods, Inc.*, 720 F.Supp. 714, 717 (N.D.Ill.1989); *Palumbo v. I.M. Simon & Co.*, 701 F.Supp. 1407, 1409–10 (N.D.Ill.1988).

Uniroyal Goodrich would appear to satisfy its proximate cause obligations in its allegation that "[t]he enterprises used by the defendants, Shafiq and Hauper, derived income from the aforementioned pattern of racketeering activity and used or invested part of such income...." Complaint ¶ 57. Given the foregoing discussion about § 1962(a) "persons" and "enterprises," that alone is sufficient to deny defendants' dismissal motion.

On remand to the District Court, *Haroco* turned, in part, on an identical argument. There, denying defendants' motion to dismiss, the court noted that "when the fruits of racketeering come to rest in a corporate-enterprise, that enterprise is within RICO's intended reach. Section 1962(a) is designed to recover these proceeds. [Citation omitted]. Section 1964(c) must be read to further this design.... [T]he victim's loss is necessarily linked to the enterprise's gain. This is sufficient to satisfy the proximate cause requirement of section 1964(c)." *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 647 F.Supp. 1026, 1033 (N.D.Ill. 1986). Uniroyal Goodrich's § 1962(a) allegations survive defendants' motion to dismiss.

### D. § 1962(b)

■ Uniroyal Goodrich's § 1962(b)[4] claim is also sufficient as against Mutual Trading, Shafiq, and Hauper. Defendants' sole argument in support of dismissal is that a "person" may not be an "enterprise" under this section of RICO. Given our previous discussion about the distinction between § 1962(a) and § 1962(c), the validity of that argument depends on whether § 1962(b) is more like the subpart of § 1962 that it precedes, or more like the subpart it follows. *Liquid Air*, 834 F.2d at 1307.

We find the authority cited by Uniroyal Goodrich to be more persuasive than that cited by Mutual Trading. There is

> no distinction between "investing in an enterprise" [§ 1962(a)] and "acquiring an interest in an enterprise" [§ 1962(b)] sufficient to require separate entities for a subsection (b) violation. Unlike subsection (c), which requires a *relationship* between the "person" and the "enterprise" (employer-employee), subsections (a) and (b) require only the *use* of an "enterprise" by a "person." Accordingly, we hold that, like subsection (a), subsection (b) does not require the existence of an enterprise separate and distinct from the person sought to be held liable.

*Id.; see also Wilcox v. First Interstate Bank*, 815 F.2d 522, 529 (9th Cir.1987); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1398 (9th Cir. 1986).

### E. § 1962(c)

■ Uniroyal Goodrich's § 1962(c) claim against Shafiq and Hauper is satisfactory to the extent that Mutual Trading is alleged to be the enterprise whose affairs Shafiq and Hauper allegedly conducted though a pattern of racketeering activity.[5] To the extent that it seeks RICO liability for the alleged racketeering activity of an "association-in-fact" of all the named defendants, however, we grant defendants' motion to dismiss.

To constitute a viable RICO enterprise, an association-in-fact must be an entity that has an existence "separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2529, 69

---

**4.** In its entirety, § 1962(b) reads:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**5.** Defendants' arguments against the § 1962(c) count virtually concede this point. They focus their attention on the association-in-fact aspects of Uniroyal Goodrich's allegations, and away from the enterprise (Mutual Trading) aspects. They do argue that no pattern of racketeering activity has been shown, but, as we indicate above, this contention is without merit.

L.Ed.2d 246 (1981). In other words, the association-in-fact must have "an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the commission of the predicate acts constituting the 'pattern of racketeering activity.'" *United States v. Neapolitan,* 791 F.2d 489, 500 (7th Cir.) (quoting *United States v. Anderson,* 626 F.2d 1358, 1372 (8th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981)), *cert. denied,* 479 U.S. 939–40, 107 S.Ct. 421–22, 93 L.Ed.2d 371–72 (1986); *see also Langley v. American Bank of Wisconsin,* 738 F.Supp. 1232, 1241–42 (E.D.Wis.1990) (same).

Here, Mutual Trading has the sort of distinct and separate existence *Turkette* and *Neapolitan* require, but the association-in-fact of Mutual Trading, Germano, Shafiq, and Hauper does not. We dismiss that part of Uniroyal Goodrich's § 1962(c) claim against Shafiq and Hauper dependent on the association-in-fact's alleged racketeering activity.

### F.   § 1962(d)

Although Uniroyal Goodrich fails to mimic the pleading form Mutual Trading, Shafiq, and Hauper urge it to employ, its § 1962(d) [6] RICO conspiracy claim survives the defendants' motion to dismiss. Reading the complaint *in toto,* and drawing the obvious and reasonable inferences from that reading, it is plain that Uniroyal Goodrich sufficiently alleges each defendant's agreement to commit two or more predicate acts. *See, e.g., FMC Corp. v. Boesky,* 727 F.Supp. 1182, 1200 (N.D.Ill.1989). That being the case, dismissal on the grounds suggested by defendants would be overly, and unnecessarily, formalistic.

### IV.   Pendent State Claims

### A.   Illinois Consumer Fraud and Deceptive Business Practices Act

Uniroyal Goodrich's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Ann.Stat. ch. 121½,

paras. 261–272 (Smith–Hurd 1960 & 1990 supp.), like the vast bulk of the RICO claims, need not be dismissed. The Act, in relevant part, provides that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

*Id.* at para. 262.

Defendants' argument for dismissal is threefold: 1) Uniroyal Goodrich is not a "consumer" for purposes of the Consumer Fraud Act; 2) no consumer injury has been, or could be, alleged; and 3) no Illinois conduct, consumption, or injury has been alleged.

The Act provides a private right of action to "[a]ny person who suffers damage as a result of a violation of this Act committed by any other person." *Id.* at para. 270a(a). The term "person" is defined as "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." *Id.* at para. 261(c).

There is no obvious requirement on the face of the statute that a "person" be a "consumer" in order to have standing under the Act. Indeed, the title of the Act suggests that it is designed to "protect consumers and borrowers and *businessmen* against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." *Id.* at para. 261 (emphasis added). Defendants' case authority does not suggest otherwise. *National Union*

---

**6.** In its entirety, § 1962(d) reads:

(d) It shall be unlawful for any person to conspire to violate any of the provisions of

subsection (a), (b), or (c) of this section.

*Fire Ins. Co. v. Continental Illinois Corp.*, 652 F.Supp. 858, 861 (N.D.Ill.1986) (beneficiary not a consumer under Act) (citing *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 328, 13 Ill.Dec. 699, 703, 371 N.E.2d 634, 638 (1977) (medical school applicant not among the group protected under the Act)). In short, the Consumer Fraud Act clearly extends to businesses; Uniroyal Goodrich need not be a "consumer" to bring an action under the Act. *See, e.g., W.E. O'Neil Constr. Co. v. National Union Fire Ins. Co.*, 721 F.Supp. 984, 1000 (N.D.Ill.1989) ("[t]he Act thus specifically applies to business corporations"); *Jay's Foods, Inc. v. Frito-Lay, Inc.*, 664 F.Supp. 364, 367–68 (N.D.Ill.1987), *aff'd*, 860 F.2d 1082 (7th Cir.1988), *cert. denied*, 489 U.S. 1014, 109 S.Ct. 1125, 103 L.Ed.2d 188 (1989).

As to the second prong of defendants' argument, the case law is split on the issue of whether it is necessary to allege public injury or of injury to consumers generally. *See, e.g., W.E. O'Neil Constr. Co.*, 721 F.Supp. at 1001 (listing cases). We find that the question is not sufficiently settled to justify dismissing Uniroyal Goodrich's claim on those grounds, although (regardless of whether it applies to defendants' alleged conduct prior to enactment) the January 1, 1990 amendment to paragraph 270a(a) might suggest that no such requirement has ever been intended. Ill.Ann.Stat. ch. 121½, para. 270a(a) ("Proof of a public injury, a pattern, or an effect on consumers generally shall not be required.").

Finally, defendants have failed to demonstrate just exactly how, given the Act's broad definitional sweep and explicit mandate of liberal construction,[7] Uniroyal Goodrich's allegations do not satisfy the "Illinois contact" requirements of the Act. The statute prohibits "deceptive acts or practices" in the "conduct of any trade or commerce." *Id.* at para. 262. The phrase "trade and commerce" means "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or *indirectly* affecting the people of this State." *Id.* at para. 261(f) (emphasis added).

We deny defendants' motion to dismiss Uniroyal Goodrich's claim under the Consumer Fraud Act.

### B. Account Stated

We grant dismissal, however, of the claim against Mutual Trading based on an account stated theory. Uniroyal Goodrich alleges that it sold and delivered certain tires to Mutual Trading, and that Mutual Trading "has refused to pay the account stated" on various invoices relating to the tire sales. Complaint ¶¶ 71–76.

By definition, an account stated is "an agreement between parties who have had previous transactions that the account representing these transactions is true, so that the balance is correct, together with a promise which may be express or by implication for payment of this balance." *Allied Wire Prods., Inc. v. Marketing Techniques, Inc.*, 99 Ill.App.3d 29, 39–40, 54 Ill.Dec. 385, 393, 424 N.E.2d 1288, 1296 (1st Dist.1981). This "agreement" is manifest by a "meeting of the parties' minds upon the correctness" of the account. *Id.* at 40, 54 Ill.Dec. at 393, 424 N.E.2d at 1296.

Here, Uniroyal Goodrich makes no allegation that Mutual Trading ever agreed with it as to any amount owed, and Mutual Trading contends that it "frequently disputed the amount invoiced by" Uniroyal Goodrich. Simply put, Uniroyal Goodrich has not alleged the requisite mutual assent —"[a]n account stated may not be made the instrument to create an original liability; the whole point of an account stated is that it merely determines the amount of the debt where liability previously existed." *Richmond Wholesale Meat Co. v. Hughes*, 625 F.Supp. 584, 590 (N.D.Ill.1985) (citing *Allied Wire Prods., Inc.*).

---

**7.** "This Act shall be liberally construed to effect the purposes thereof." Ill.Ann.Stat. ch. 121½, para. 271a.

### C. Fraud

Defendants argue only that Uniroyal Goodrich's allegations of fraud lack sufficient Rule 9(b) particularity. We have addressed that argument in the context of the RICO allegations, *supra.* Accordingly, the motion to dismiss the common law fraud count is denied.

### D. Interference with Contractual Relationship

The elements of a cause of action for interference with a contractual relationship are easily stated: 1) a valid contract; 2) knowledge by the defendant of that contract; 3) an intentional and malicious inducement of breach by the defendant; 4) breach of contract stemming from defendant's wrongful conduct; and 5) resultant damage to the plaintiff. *George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1330 (7th Cir. 1983); *see also Swager v. Couri,* 60 Ill. App.3d 192, 196, 17 Ill.Dec. 457, 460, 376 N.E.2d 456, 459 (1978), *aff'd,* 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979).

■■■ Uniroyal Goodrich alleges that Mutual Trading, Shafiq, and Hauper tortiously interfered with the contract (the "employment agreement") that it had with its employee, Germano, that the defendants knew that Germano worked for Uniroyal Goodrich (indeed, that relationship would have provided the anchor for defendants' alleged fraudulent activity), that they gave Germano many inducements, including a $15,000 cash payment, that Germano no longer works for Uniroyal Goodrich because of the alleged fraudulent activity, and that Uniroyal Goodrich suffered harm as a result. This is sufficient to allege interference with a contractual relationship. We deny defendants' motion to dismiss this count of the complaint.

### E. Constructive Trust

Despite some confusion in the complaint, it would be inappropriate to dismiss Count XII of Uniroyal Goodrich's complaint by virtue of the arguments presented by the defendants. Count XII is titled "constructive trust," but really sounds more like an unjust enrichment or similar claim. Uniroyal Goodrich alleges that Mutual Trading has received monies to which it has no rightful claim, and asks that a constructive trust be imposed upon all monies rightfully due and owing to it. The imposition of a constructive trust is permissible to "redress unjust enrichment caused by a party's wrongful conduct," including fraudulent conduct. *Metropulos v. Chicago Art Glass, Inc.,* 156 Ill.App.3d 727, 736, 109 Ill.Dec. 229, 235, 509 N.E.2d 1068, 1074 (2d Dist.1987).

### V. Conclusion

We grant defendants' motion to dismiss the association-in-fact aspect of Uniroyal Goodrich's § 1962(c) RICO claim and the claim based on an account stated theory. We deny the motion in all other respects. It is so ordered.