**H.D. OLIVER FUNERAL APARTMENTS, INC.,**
Plaintiff,

v.

**DIGNITY FUNERAL SERVICES, INC.,**
t/a Altmeyer Funeral Homes, a Virginia corporation,

and

**Altmeyer Funeral Homes, Inc., a West Virginia corporation, Defendants.**

Civil Action No. 2:97cv218.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 14, 1997.

Walter D. Kelley, Jr., Thomas Scott McGraw, Willcox & Savage, Norfolk, VA, for Plaintiff.

Patrick D. Allen, Calvin Wooding Fowler, Jr., Dana Duane McDaniel, Williams, Mullen, Christian & Dobbins, Richmond, VA, for Defendants.

*OPINION AND ORDER*

PRINCE, United States Magistrate Judge.

This is an action by a funeral business against another funeral business alleging causes of action under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), the Virginia Consumer Protection Act (VCPA), Va. Code § 59.1–196 *et seq.* (Count II), and for common law defamation (Count III), all growing out of a newspaper advertisement placed by the defendants. Defendants have moved to dismiss Counts II and III, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

*Facts*

H.D. Oliver Funeral Apartments, Inc. ("Oliver") is in the business of providing a full range of funeral-related services to customers in Virginia and other states.[2] Dignity Funeral Services, Inc., t/a Altmeyer Funeral Homes, offers discounted funeral-related services in Virginia and other states; Altmeyer Funeral Homes, Inc. (together the defendants will be referred to as "Altmeyer") offers full service funerals in West Virginia and other states. Oliver and Altmeyer are competitors.

On January 21, 1997, *The Virginian–Pilot,* a newspaper of general circulation in Virginia and North Carolina, published an advertise-

---

1. The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

2. In considering this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the facts are taken from the Complaint.

ment placed by Altmeyer comparing its prices with those of thirteen other funeral homes in the South Hampton Roads area, including Oliver. The comparison included the prices for traditional services, an identified stainless steel casket, and an identified vault. The total prices were also compared. The prices listed for Oliver and ten of the other compared funeral homes were knowingly false and misleading.[3]

### Discussion

In 1992, Virginia adopted the Comparison Price Advertisement Act, Va.Code §§ 59.1–207.40 *et seq.* The Act provides in § 59.1–207.42 that "[n]o supplier[4] shall in any manner knowingly advertise a comparison price which is based on another supplier's price unless: 1. The supplier can substantiate that the comparison price is the price offered for sale by another supplier ..." Sec. 59.1–207.44 provides that "[a]ny violation of this chapter shall constitute a prohibited practice under the provisions of § 59.1–200 [of the Virginia Consumer Protection Act] ..."

The Virginia Consumer Protection Act (VCPA), Va.Code §§ 59.1–196, *et seq,* was enacted in 1977. Its pertinent sections provide as follows:

§ 59.1–197. **Intent.** It is the intent of the General Assembly that this chapter shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public.

§ 59.1–198. Definitions. As used in this chapter:.... *"Consumer transaction"* means: 1. The advertisement ... of goods or services to be used primarily for personal, family or household purposes[.]

§ 59.1–200. Prohibited practices. A. The following fraudulent acts or practices committed by a supplier in connection with a

consumer transaction [are] hereby declared unlawful:.... 14. Using any [ ] deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction;.... 30. Violating any provision of the Comparison Price Advertising Act....

§ 59.1–204. Individual action for damages or penalty. A. Any person[5] who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater.[6]

In Count II of the complaint, Oliver alleges that Altmeyer's advertisement is a prohibited practice under § 59.1–200(14) and (30). It prays to permanently enjoin Altmeyer from publishing the advertisement, and it seeks compensatory, consequential and treble damages, and attorney's fees. Altmeyer has moved to dismiss Count II under Fed. R.Civ.P. 12(b)(6) for failing to state a claim for which relief can be granted.[7] More specifically, Altmeyer has moved to dismiss the count on the ground that Oliver has no standing to sue under the VCPA, because it creates a cause of action for consumers only and not competitors.

Altmeyer's argument may be summarized as follows:

1) the name of the Act indicates its purpose, that is, consumer protection;

2) its intent is to "promote fair and ethical standards between suppliers and the consuming public" (§ 59.1–197);

3) Oliver and Altmeyer are competitors; in the statute they are defined as suppliers; and there is nothing in the Act addressing competitors;

---

3. There were also three false statements in the advertisement about defendants: two concerned Altmeyer's prices and one suggested that Altmeyer had offices in more than one South Hampton Roads city.

4. Altmeyer and Oliver are suppliers under the definition contained in Va.Code § 59.1–198, which is incorporated into this Act.

5. Any person includes any natural person and corporation under the definition contained in Va.Code § 59.1–198.

6. This section also provides for the recovery of attorney's fees and court costs.

7. A motion to dismiss Count III will be considered in a separate opinion and order.

4) the Act regulates only consumer transactions, which in pertinent part is defined as the advertisement or sale of goods or services "to be used primarily for personal, family or household purposes" (§ 59.1–198);

5) the Act declares unlawful only certain acts "committed by a supplier in connection with a consumer transaction." (§ 59.1–200);

6) only persons who suffer loss as a result of a consumer transaction may recover damages (§ 59.1–204 A), while Oliver seeks damages for loss of business suffered as a competitor.

Oliver's opposition to Altmeyer's motion to dismiss may be similarly summarized as follows:

1) the Act has no limitation on who may recover damages, because "[a]ny person who suffers loss as a result of a violation" may recover damages (§ 59.1–204 A);

2) "person" under the Act includes a corporation (§ 59.1–198);

3) if a right of action was intended to be limited to consumers, the General Assembly would have explicitly supplied the limitation as it did in the Motor Vehicle Warranty Enforcement Act (§ 59.1–207.14);

4) the legislative intent (§ 59.1–197) is furthered by permitting non-consumers to sue; and,

5) the Act is remedial legislation (§ 59.1–197) and should be liberally construed.

Neither the parties nor the Court have found any Virginia appellate or federal case specifically considering the issue raised by this motion to dismiss. In *Liberty Mutual Insurance Co. v. Triangle Industries*, 957 F.2d 1153 (4th Cir.1992), the court listed a number of authorities that may be considered when the highest court of a state has not addressed an issue of state law. It concluded that, "Decisions of the state's trial courts may also be considered to provide some light upon the subject." Citing 19 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure*, § 4507, at 96. In cases involving private litigants raising unsettled questions of state law which involve—apart from normal precedential effect—only the rights of these private parties, abstention is deemed to be inappropriate, even if it is felt that the federal decision may conflict with later state decisions on the same issue. *See Wohl v. Keene*, 476 F.2d 171, 174 (4th Cir.1973). Unsettled questions of state law are frequently decided by federal courts. *E.g., Martin v. State Farm Mut. Auto. Ins. Co.*, 375 F.2d 720, 722 (4th Cir.1967); *Stephens v. State Farm Mut. Auto. Ins. Co.*, 508 F.2d 1363 (5th Cir.1975).

Altmeyer has urged the Court to consider as instructive the case of *Winchester Homes Inc. v. Hoover Universal, Inc.*, 27 Va. Cir. 62, a case decided by Judge Plummer of the Circuit Court of Fairfax County in 1992. In that case, materials were sold by a manufacturer to a building contractor for incorporation into new homes. The contractor sued the manufacturer alleging fraud, breach of implied contract, breach of express warranty, and violation of the VCPA. The court sustained a demurrer to the VCPA claim on the ground that the materials were not purchased "primarily for personal, family or household purposes" as a consumer transaction is defined in Va.Code § 59.1–198.[8] Altmeyer argues that this holding "confirms that a claim under the VCPA belongs exclusively to the consumer." Defendant Altmeyer Funeral Homes, Inc.'s Memorandum of Law in Support of Motion to Dismiss Counts II and III of Plaintiff's Complaint, 6. The Court believes that Altmeyer has misconstrued the holding in *Winchester Homes*. There, the court held that there was no "consumer transaction," because the materials were not purchased for the defined purposes. The court did not hold, as Altmeyer argues, that only a consumer could sue, because, in fact, Winchester Homes, Inc. *was* a consumer; it just was not a consumer which was involved in a "consumer transaction" as

---

8. The definition of "consumer transaction" in § 59.1–198 is limited to four types of transactions. The first, which is the type alleged in the case at bar and in *Winchester Homes* is "[t]he advertisement, sale, lease or offering for sale or lease, of goods or services to be used primarily for personal, family or household purposes[.]" The other three types are transactions involving business opportunities, an individual's finding or obtaining employment, and layaway agreements.

defined by the Act. In the case at bar, unlike the *Winchester Homes* purchase and sale, the advertisement placed in *The Virginian–Pilot* by Altmeyer was a consumer transaction as defined by the statute.

Altmeyer also relies upon a number of cases from other jurisdictions. In *Colyer v. Trew,* 1982 WL 4419 (Tenn.App. Feb.12, 1982), the court held· that plaintiff had no right of action under the Tennessee Consumer Protection Act for the false advertising of a competing tow truck operator, because the purpose and intent of the TCPA was to benefit consumers in the field of buying and selling goods and services, and it was not designed as a tool to enforce unfair competition between competitors. While the case appears to be on all fours with the one at bar, there is a significant difference. The language of the Act made it abundantly clear that only consumers could recover. Interpreting the Act to reach that conclusion was a simple matter.

*Quality Auto Parts Co., Inc. v. Bluff City Buick Company, Inc.,* 1992 WL 379077 (Tenn.App. Dec. 21, 1992), added little to the law in Tennessee. Quoting at length from *Colyer,* it held that an employee could not sue his employer under the Act.

In *LJS Co. v. Marks,* 480 F.Supp. 241 (S.D.Fla.1979), Florida's "Little FTC Act" had provisions much like the VCPA, but significantly different in a way that prevented a corporation from using it to sue an attorney it had hired to undertake commercial litigation. The Florida Act defined a "consumer transaction" as "a sale ... or other disposition of an item of goods, a consumer service, or an intangible *to an individual for purposes that are primarily personal, family or household or that relate to a business opportunity that requires both his expenditure of money or property and his personal services* ..." (Emphasis in original.) The plaintiff was a corporation, not an individual. In stating what it was not deciding, the court said, "This Court does not construe the Act as a whole to be limited to consumer transactions." *Id.* at 244.

In *Waldo v. North American Van Lines,* 669 F.Supp. 722 (W.D.Pa.1987), plaintiff sued defendant under the Pennsylvania Consumer Protection Law stemming from plaintiff's purchase and lease back of a tractor from defendant. The Pennsylvania statute combined in one section what is covered in two sections of the VCPA, which effectively changed the problem of interpretation. The Pennsylvania Act limited recovery to " '[a]ny person who *purchases* or leases goods or services primarily for personal, family or household purposes....' The obvious intent of this language is to restrict claims brought under the CPL to those which are legitimately of a consumer nature." *Id.* at 725. The transaction between the parties was a commercial one which, as the court said, obviously was not covered.

Similarly, in *Klitzner Industries, Inc. v. H.K. James & Co.,* 535 F.Supp. 1249 (E.D.Pa.1982), an earlier case involving the Pennsylvania Consumer Protection Law, the court held that a claim that defendant had copied plaintiff's copyrighted material was not covered by the Act.

Altmeyer cites *Graham v. Kold Kist Beverage Ice, Inc.,* 43 Or.App. 1037, 607 P.2d 759 (1979) as holding hat "transactions involving items 'obtained primarily for personal, family or household purposes,' did not apply to commercial transactions, [because the primary purpose of the Act was to protect consumers rather than businesses]." Defendant Dignity Funeral Services, Inc.'s Memorandum of Law in Support of Motion to Dismiss Counts II and III of Plaintiff's Complaint, 8–9. Plaintiffs in that case alleged that they operated a grocery store and had an agreement with defendant under which defendant agreed to· sell plaintiffs an ice machine, and that in the transaction defendant made false and misleading representations in violation of the Unlawful Trade Practices Act.· The court affirmed a holding that the transaction was not covered by the Act, because it was not a "business opportunity" as defined by the Act, and as argued by plaintiffs. The case has no application to the one at bar.

Finally, Altmeyer cites *Media Arts International, Ltd. v. Trillium Health Products,* 1992 WL 136081 (E.D.Pa. June 5, 1992). There plaintiff sought relief under the Pennsylvania Unfair Trade Practices and Con-

sumer Protection Act alleging that defendant marketed a juice extractor through a thirty minute "infomercial" that contained falsehoods about plaintiff's competing juice extractor. The Act created a private cause of action for any person who purchases or leases goods or services primarily for personal, family or household purposes. Citing *Klitzner,* the court held that competitors or other commercial enterprises that purchase goods for commercial use cannot sue under the Pennsylvania Act.

The cases cited by defendants are simply not supportive of the proposition that under the VCPA a business entity may not sue a competitor for false advertising.

Oliver cites *Roberts v. American Warranty Corp.,* 514 A.2d 1132 (Del.Super.1986), as holding that under the Uniform Deceptive Trade Practice Act, both consumers and competitors may sue.[9] The issue in *Roberts,* however, was whether the Delaware Act limited a right of recovery to someone in the business community, i.e., whether consumers had a right of recovery. The defendant, an automobile dealer and repairer, sued by a customer, contended that its customer, a consumer, had no standing to sue. There was very little stated in the opinion about the terms of the Act, which makes it of little help here, but nevertheless, the court stated:

> Generally, anti-fraud provisions are designed for the protection of anyone who would otherwise be injured by the prohibited conduct.... It cannot be accepted that the legislature intended to prevent various deceptions of the public but intended not to permit a remedy to be exercised by the deceived members of the public.
>
> ....

The Delaware Uniform Deceptive Trade Practices Act does not specify who may recover for violation of the Act nor does it by its terms limit or define the class protected by the Act. It will be noted that the

word "person" ... gives full breath to that word and contains no limitation.

> ....

... the [Act] mentions no protected parties. In the absence of such designation or other clear indication within the context of the statute, the Court will consider the statute to be available to protect any person[10] who has been damaged as a result of prohibited conduct.

*Roberts* is some support in a general way of Oliver's contention, but without more information concerning the terms of the Delaware statute, its usefulness in interpreting the Virginia statute is limited.

In *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 749 F.Supp. 869 (N.D.Ill. 1990), the parties did business with each other over a period of eight years. Plaintiff brought a RICO action alleging that defendant submitted false invoices and volume discount claims, purchased tires at unauthorized prices, made false claims for tire defects, engaged in "short shipping" tactics, and engaged in other commercial wrongdoings. Defendant moved to dismiss a pendent claim under the Illinois Consumer Fraud and Deceptive Business Practices Act upon several grounds, including that plaintiff was not a consumer. That Act provided in relevant part as follows:

> Unfair methods of competition and unfair acts or practices, including but not limited to the use or employment of any [of a number of wrongful actions] ... in the conduct of any trade or commerce are hereby declared unlawful ...

*Id.* at 877. The Act provided for a right of action by any person who suffers damages in violation of the Act committed by any other person. The term person is broadly defined, including corporations. The title of the Act said that it was designed to " 'protect consumers and borrowers and *businessmen* against fraud, unfair or deceptive acts or practices in the conduct of any trade or

---

9. In its Brief in Opposition to Defendants' Motion to Dismiss Counts II and III of Plaintiff's Complaint, 10, Oliver quotes and presents parts of two widely separated paragraphs of *Roberts* as though from one paragraph and represents through the use of brackets that the court held

that a competitor may sue, which is clearly not the case.

10. Here Oliver added "[competitor or consumer]."

commerce.'" *Id.* at 877. The court understandably held that *this* statute extends a right of action to businesses, as well as consumers. This case is of no aid in interpreting the VCPA.

Plaintiff relies upon *Heller v. Lexton–Ancira Real Estate Fund, Ltd.*, 809 P.2d 1016 (Col.Ct.App.1990),[11] for the proposition that "any person", as used in the Colorado Consumer Protection Act, who was damaged by a deceptive trade practice, included a competitor. The Act broadly provided: "The provisions of this article shall be available to any person in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice." *Id.* at 1022. The court expressly disagreed with an earlier decision by a federal court in Colorado that only consumers, not businesses, had standing to sue under the Act. Helpful to Oliver in a general way, this case does not aid in interpreting the VCPA.

The cases cited by the parties are representative of different versions of consumer protection statutes. No two are alike. The most common phraseology found in these statutes is "primarily for personal, family or household purposes." That phrase, however, is used in several different contexts. None of the cited cases can be used with confidence for an interpretation of the Virginia statute. As was stated in one law review article:

> Whether a business can qualify as a consumer depends first on the statute. In states where the consumer protection statute is limited to consumers purchasing goods "primarily for personal, family, or household purposes," a business lacks consumer standing. Under statutes allowing any injured "person" to sue, a business may certainly make a consumer protection claim if it was acting as a consumer in a particular transaction.[12]

**11.** Plaintiff Heller was a successor in interest to a corporation.

**12.** An example of where that did not apply is *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 27 Va.Cir. 62 (1992), where a home builder who bought building material for use in building

Edward X. Clinton, Jr., *Do Businesses Have Standing To Sue Under State Consumer Fraud Statutes?*, 20 S.Ill.U.L.J. 385, 400 (1996).

The inquiry under the Virginia Consumers Protection Act begins with § 59.1–204. Subsection A provides that "[a]ny person who suffers loss as the result of a violation of § 59.1–200 shall be entitled to initiate an action to recover actual damages, or $100, whichever is greater." Section 519.1–198 defines "person" as including a corporation. Section 59.1–200 declares unlawful "fraudulent acts or practices committed by a supplier[13] in connection with a consumer transaction," including the two alleged by Oliver: "14. Using any [ ] deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction; ... [and] 30. Violating any provision of the Comparison Price Advertising Act, Chapter 17.7." A "consumer transaction" is defined in § 59.1–198, as including "[t]he advertisement ... of goods or services to be used primarily for personal, family, or household purposes."

The advertisement published by Altmeyer is a consumer transaction involving goods or services to be used for personal or family purposes. It is alleged to contain false and misleading information, and to be in violation of the Comparison Price Advertising Act. Oliver alleges that it is a person who suffered losses as a result of the advertisement.

■ The question raised is whether Oliver, a competitor of Altmeyer's, has standing to bring this action under these statutes. Section 59.1–197 provides that the VCPA "shall be applied as remedial legislation." In *Rector & Visitors of U. of Va. v. Harris*, 239 Va. 119, 387 S.E.2d 772 (1990), the Supreme Court of Virginia stated that in the preceding year it "reiterated and reaffirmed the 400–year–old 'mischief rule' of statutory construction", *id.* 387 S.E.2d at 775, and said:

> homes was unable to sue under the VCPA, even though it was a consumer of the products, because its consumption was not for personal, family or household purposes.

**13.** " 'Supplier' means a seller ... who advertises ... in consumer transactions...." § 59.1–198.

Every statute should be read so as to "promote the ability of the enactment to remedy the mischief at which it is directed." Remedial statutes are to be "construed liberally, so as to *suppress the mischief* and advance the remedy" in accordance with the legislature's intended purpose. All other rules of construction are subservient to that intent. [Emphasis in original.] *Id.* 387 S.E.2d at 775.

*See also, Carmel v. City of Hampton,* 241 Va. 457, 403 S.E.2d 335 (1991).

Virginia does not provide any legislative history with regard to its enactments. Occasionally an act will include a section stating its purpose, e.g., the Virginia Antitrust Act, § 59.1–9.2, and the Virginia Motion Picture Fair Competition Act, § 59.1–256; stating the findings of the General Assembly, e.g., the Virginia Petroleum Products Franchise Act, § 59.1–21.9; stating the scope of the Act, e.g., the Collision Damage Waiver Act, § 59.1–207.29; and stating the intent of the act, e.g., the VCPA, § 59.1–197, and the Virginia Motor Vehicle Warranty Enforcement Act, § 59.1–207.10. In § 59.1–197, the intent of the VCPA is said "to promote fair and ethical standards of dealings between suppliers and the consuming public." To say that the Act is remedial legislation that should be construed liberally, which is the law in Virginia, is only a partial statement of the law. The full statement is that remedial legislation is to be construed liberally, so as to suppress the mischief and advance the remedy *in accordance with the legislature's intended purpose.* The VCPA is to promote fair and ethical standards between suppliers and the consuming public. That expressed intent leaves little to the imagination. If the "mischief rule" was limited to declaring that remedial legislation should be liberally construed, the Court would have to hold that a competitor had standing to sue, because that interpretation is reasonable and would be a liberal construction; but the rule requires liberal construction to promote standards of dealings between suppliers and the consuming public. A competitor does not fit in that equation. Nor is there any provision in the VCPA authorizing Oliver to seek an injunction against Altmeyer from publishing the advertisement.

The Fourth Circuit Court of Appeals, in dictum, indicated its understanding of the Act in the same way. In *Gill v. Rollins Protective Services Co.,* 773 F.2d 592 (4th Cir.1985), a homeowner's insurance carrier was subrogated to the owner's cause of action against defendant, which installed a home fire alarm system that failed. An issue in the case was whether the provisions of § 59.1–199.D, which provides that the Act shall not apply to insurance companies, precluded the insurance company's subrogation claim. In holding that there was no preclusion, the court said:

In excluding insurance companies from the Act, Section 59.1–199 does not mention subrogation rights at all. Instead, it is concerned that an insurance company, as well as a bank, a savings and loan association, a credit union, a small loan company or a public service corporation not be sued for its actions *by a member of the consuming public* so long as these entities are subject to state or federal regulation.

*Id.* at 597 (emphasis added).

Oliver has argued forcefully that to exclude a competitor from using the Act to obtain relief precludes it from any method of recovery under State law for the wrong it has suffered. Of course, if that is the case, the legislature might be persuaded to amend the statute to suppress that mischief also. Without deciding an issue that is not before the Court, however, it appears that Oliver's perceived plight may not exist. Va.Code § 18.2–216, makes it unlawful to publish an advertisement containing untrue, deceptive or misleading statements of fact, classifying it as a Class 1 misdemeanor. Va.Code § 59.1–68.3 gives any person who suffers a loss as a result of a violation of § 18.2–214 *et seq.*, a cause of action for damages similar to damages recoverable under the VCPA. Va. Code § 1–13.19 (under Chapter 2, Common Law, Statutes and Rules of Construction) defines "person" as including a corporation. In *Maldonado v. Nutri/System, Inc.,* 776 F.Supp. 278 (E.D.Va.1991), it was held that the cause of action exists even if there has been no successful criminal prosecution.

Accordingly, plaintiff's motion to dismiss Count II should be granted.

### ORDER

For the reason stated above, it is OR-DERED that defendants' motion to dismiss Count II of the Complaint is GRANTED.

The Clerk is requested to mail a copy of this Opinion and Order to all counsel of record.