THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA, ETC.

V.

VIRGIL THOMAS HARRIS, ET AL.

Record No. 881333

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and
Cochran, Retired Justice

*Pamela A. Sargent, Assistant Attorney General (Mary Sue Terry, Attorney General; H. Lane Kneedler, Chief Deputy Attorney General; Gail S. Marshall, Deputy Attorney General; Mary Yancey Spencer, Senior Assistant Attorney General, on briefs), for appellant.*

*J. Benjamin Dick; John W. Zunka (Taylor & Zunka, on briefs), for appellees.*

JUSTICE RUSSELL delivered the opinion of the Court.

Pursuant to Code § 8.01-66.9, a hospital asserted a lien for its services upon a patient's claim against an alleged tort-feasor. The hospital also obtained a judgment against the patient. When the patient reached a settlement with the alleged tort-feasor, the court reduced the hospital's lien pursuant to Code § 8.01-66.9, and apportioned the balance of the settlement between the patient, his attorney, and the hospital. The hospital thereafter sued out a summons in garnishment under its judgment, seeking to acquire that portion of the settlement which had been allocated to the patient. In this appeal, we must determine whether the action of the court in reducing the lien and apportioning the settlement under Code § 8.01-66.9, affected the hospital's right to enforce its judgment against the patient's share.

In 1981, Virgil Thomas Harris (the plaintiff) was injured in a motorcycle accident in Albemarle County. He alleged that his injuries resulted from the negligence of Gary Michael Campbell (the defendant). The plaintiff received treatment for his injuries at the University of Virginia Hospital, in Charlottesville, incurring a bill of $74,682.49. He made no payments on the bill and the hospital, in 1985, acquired a judgment against him for that amount.

In 1982, the plaintiff filed a motion for judgment against the defendant, claiming $500,000 compensatory damages and $150,000 punitive damages. The case remained essentially dormant on the docket until 1988, but during its pendency, the Rector and Visitors of the University of Virginia asserted a statutory lien, pursuant to Code § 8.01-66.9, in the amount of the hospital bill, upon the plaintiff's claim against the defendant.

The trial date set for the personal injury case was February 10, 1988. The defendant's applicable insurance policy limit was

$50,000. Within 72 hours of the scheduled trial date, defense counsel offered $41,500 in settlement. Plaintiff's counsel agreed to settle the case for that amount if the court would reduce the hospital's lien and apportion the settlement. The court, after notice to the hospital and a hearing, entered an order on March 7, 1988, reducing the hospital's lien to $5,000, fixing the plaintiff's attorney's fee at $16,600, and apportioning the $19,900 balance to the plaintiff. None of the parties noted an objection.

The plaintiff deposited his share of the settlement proceeds in two accounts at the Jefferson National Bank. On March 18, 1988, the Rector and Visitors sued out a summons in garnishment under the hospital's 1985 judgment, and obtained service on the bank. The bank thereupon paid the amount on deposit into court. On March 24, the court vacated the final judgment in the personal injury case and thereafter consolidated the personal injury case and the garnishment proceeding. The plaintiff moved the court to quash the garnishment. By letter opinion, the court ruled that the final sentence of Code § 8.01-66.9 gave the court the authority to "compromise and discharge" debts due the Commonwealth, even where a debt had been reduced to judgment, and that the apportionment of the settlement made by the court's order of March 7 was binding on the Rector and Visitors. The court entered a final order on September 7, 1988, reinstating the apportionment made on March 7, and quashing the garnishment. We granted the Rector and Visitors an appeal.

The Rector and Visitors argue that the effect of the court's ruling was to impair the hospital's 1985 judgment, which was final and subject to modification only on the grounds set forth in Code § 8.01-428 (fraud, clerical mistakes, accord and satisfaction, and other grounds). They contend that, even though the court had the statutory authority to reduce their lien acquired under Code § 8.01-66.9, their 1985 judgment was still valid and enforceable against any of the plaintiff's assets, including his share of the apportioned settlement, subject to a credit for the $5,000 apportioned to the hospital by the court. The Rector and Visitors argue that they have the same right to collect their judgment by garnishment proceedings as any other judgment creditor would have.

The plaintiff argues that the position taken by the Rector and Visitors would, if adopted by this Court, render the final sentence of Code § 8.01-66.9 useless and ineffectual. He points out that there would be no reason to seek judicial reduction of a lien and

apportionment of a settlement if the lien creditor could, immediately following settlement, seize the plaintiff's share to satisfy the remaining balance of the debt. In those circumstances, the plaintiff argues, a plaintiff would have no incentive to settle, but would, instead, be well-advised to go to trial in the hope of a larger recovery.

■ At the time of the trial court's decision in the present case, the final sentence of Code § 8.01-66.9 provided that the court in which a suit by an injured person has been filed, after notice to the Commonwealth or the appropriate institution,

> may reduce the amount of the lien, and apportion the recovery between the plaintiff, the plaintiff's attorney, and the Commonwealth or such . . . institution as the equities of the case may appear, where the first offer acceptable to the plaintiff's attorney is not made until seventy-two hours prior to the date for trial.

In *Commonwealth* v. *Smith*, 239 Va. 108, 387 S.E.2d 767 (this day decided), we discussed the purpose and effect of this provision. We concluded that its purpose was to "reduce expense and delay, to avoid litigation, and to promote settlements." *Id.* at 112, 387 S.E.2d at 769. We held that where the provision is applicable, it vests in the trial judge the authority, otherwise vested by Code § 2.1-127 in the Attorney General, the Governor, and the appropriate department head, "to compromise and reduce the Commonwealth's lien." *Id.* at 112, 387 S.E.2d at 769. The question of the trial court's authority over the Commonwealth's underlying debt was not before us in *Smith*, and it comes to us now as a matter of first impression.

■ Code § 2.1-127 has, for many years, given authority to the Attorney General, with the approval of the head of the appropriate institution and, in the case of claims over a stated amount, with the approval of the Governor, to compromise, settle, and *"discharge"* disputes and claims involving the interests of the Commonwealth and its institutions. *Id.* (Emphasis added.) That section was in effect when the statutory predecessor of Code § 8.01-66.9 was originally enacted and it was clearly within the legislature's contemplation during many amendments of § 8.01-66.9, which contain cross-references to § 2.1-127. It is, therefore, significant that the General Assembly, when adding the final sen-

tence to § 8.01-66.9 in 1981 (Acts 1981, c. 562), chose not to use language parallel to that in § 2.1-127. The 1981 amendment to § 8.01-66.9 authorized the trial judge, in specified circumstances, to "reduce the amount of the lien." It did not take the further step of authorizing the judge to "discharge" the Commonwealth's claim, although § 2.1-127 vested that authority in the Attorney General, subject to the appropriate approvals.

■ Accordingly, we conclude that the final sentence of Code § 8.01-66.9 does not give the court authority to discharge the lien-holder's underlying debt, except to subject it to a credit for the amount apportioned to it in the settlement. It follows that the court's action in the present case had no effect upon the judgment to which the claim of the Rector and Visitors had been reduced, except to subject the claim to a $5,000 credit.

That holding does not, however, end our inquiry. Granted that the hospital's judgment remains enforceable against other property belonging to the plaintiff, does it follow, then, that the judgment creditor may enforce it against the plaintiff's share of the settlement after the court has, pursuant to Code § 8.01-66.9, "apportioned the recovery . . . as the equities of the case may appear?" If so, the court's action was an exercise in futility, because the same result would have been reached without any judicial intervention.

■ In *Board of Sup. v. King Land Corp.*, 238 Va. 97, 102-103, 380 S.E.2d 895, 897-98 (1989), we reiterated and reaffirmed the 400-year-old "mischief rule" of statutory construction. Every statute should be read so as to "promote the ability of the enactment to remedy the mischief at which it is directed." Remedial statutes are to be "construed liberally, so as to *suppress the mischief* and advance the remedy" in accordance with the legislature's intended purpose. All other rules of construction are subservient to that intent. *Id.* (emphasis in original) (citations omitted).

■ In *Commonwealth v. Smith*, referring to the statutory provision under consideration here, we said: "The legislative purpose of the 1981 amendment is met only if the statute is construed to promote, not to frustrate, settlements." 239 Va. at 112, 387 S.E.2d at 770. It is apparent that the construction advocated by the Rector and Visitors would, in the circumstances of this case, remove any incentive the plaintiff might have to settle. Having no immediate prospect of gain in a settlement, the stronger incentive would be to risk the hazards of trial in the hope of a recovery

large enough to discharge the debt, pay his attorney, and leave a substantial balance to him.

■ Further, an examination of the statutory language fails to support the construction advocated by the Rector and Visitors. Although the 1981 amendment did not give the court authority to discharge the lien-holder's underlying claim, it went further than merely granting the court the power to "reduce the amount of the lien." The amendment also authorized the court to "apportion the recovery between the plaintiff, the plaintiff's attorney, and the Commonwealth or such institution as the equities of the case may appear . . . ." Code § 8.01-66.9.* "Apportion" is defined: "To divide and assign in just proportion . . . to allot." Webster's New International Dictionary 132 (2nd ed. 1934).

The General Assembly, therefore, not only intended that the court would have authority to reduce the lien asserted by the Commonwealth or one of its institutions, but also intended that the court would have the power to determine what portion of the recovery each of the contending parties would ultimately receive, and to divide and distribute the recovery accordingly. If the lien-holder may thereafter seize the share allotted to the plaintiff by the court through garnishment, attachment, levy, or other process, the legislative purpose is subverted, and the "mischief" at which the 1981 amendment was directed remains without redress.

■ Accordingly, we hold that when the court, acting pursuant to the final sentence of Code § 8.01-66.9, apportions a recovery between a plaintiff, the plaintiff's attorney, and the Commonwealth or its institutions, that apportionment is binding upon the parties whose claims were adjudicated in the apportionment proceeding, provided such parties had proper notice. The shares of the recovery thus apportioned are thereafter immune from the claims of the other parties to the apportionment, although such claims, subject to credits resulting from the apportionment, may be enforced against other property.

Although we do not adopt the trial court's ruling that it had authority to "discharge" the hospital's 1985 judgment, we conclude that the court committed no error in quashing the garnish-

---

* Although the final sentence of Code § 8.01-66.9 was re-written in 1989, effective July 1, 1990, the above-quoted language remains unchanged. Acts 1989, c. 624.

ment sued out by the Rector and Visitors. Accordingly, the judgment will be

*Affirmed.*

CHIEF JUSTICE CARRICO, with whom JUSTICE COMPTON joins, dissenting.

While the majority affirms the judgment appealed from, it holds that the trial court had no "authority to 'discharge' the hospital's 1985 judgment." I agree with that holding. Yet, the majority proceeds to discharge the judgment in part by holding that the funds received by the plaintiff are "immune from the claims of the other parties to the apportionment." I cannot agree with that holding.

If the trial court had no power to discharge the judgment in toto, from whence comes the power of the majority to discharge it in part? Certainly not from the apportionment language of Code § 8.01-66.9, which the majority assigns as the sole source of its authority. As the majority notes, "apportion" means to "divide and assign in just proportion . . . to allot." On the other hand, "to discharge [a] debt or claim is to extinguish it, to annul its obligatory force, to satisfy it." Black's Law Dictionary 416 (5th ed. 1979).

The majority says that, if the judgment lienor is permitted to seize the share of the recovery apportioned to the plaintiff in this case, the "legislative purpose is subverted, and the 'mischief' at which the 1981 amendment [to Code § 8.01-66.9] was directed remains without redress."

But this Court is confined to the language the General Assembly used in attempting to deal with the mischief, and, if that language is insufficient for the purpose, so be it.