JUSTICE COCHRAN,
with whom JUSTICE COMPTON and JUSTICE STEPHENSON join, dissenting.
I take a different view of this appeal.
The majority assumes, without deciding, that the January 19, 1987, notice from the Coursons to Margaret N. Simpson constituted sufficient notice to Gordon P. Peyton and to the Nicoll trust. I consider this initial question to be highly significant in the appeal. The Coursons presented evidence in the trial court sufficient to make a prima facie case that the required notice was given, and this evidence was not rebutted. Accordingly, I would hold, rather than assume, that there was sufficient notice to Simpson, Peyton, and the Nicoll trust.
What then were the trustees, Simpson and Peyton, and the beneficiaries of the Nicoll trust (Nicoll and Fuller) required to do under the provisions of Code § 49-26? According to the majority they were required to do nothing, because the principal debtor, Springfield Associates, Inc., was insolvent under the common definition of insolvency that its liabilities exceeded its assets. It is undeniable, however, that they could have instituted suit against the principal debtor, even if insolvent, and recovered the full amount of the obligation for which the Coursons were sureties. The Coursons had assigned to The George Mason Bank a sum sufficient to discharge the obligation in full, regardless of the financial status of the principal debtor. I would hold that under *323 these circumstances, the debtor was not insolvent as to this obligation, and the Coursons were entitled to have suit instituted against Springfield Associates, Inc.
Having eliminated the principal debtor as a target because of insolvency, the majority then concludes that there was no other party to the contract against whom suit must be instituted. To reach this conclusion the majority holds that the sureties were not parties to the contract between the principal debtor and the creditor, but were parties to a second contract securing the indebtedness. I disagree with this unduly restrictive interpretation of Code § 49-26. As a remedial statute, Code § 49-26 should be liberally construed for the benefit of sureties. Wright’s Administrator v. Stockton, 32 Va. (5 Leigh) 153, 159 (1834); see Univ. of Virginia v. Harris, 239 Va. 119, 124, 387 S.E.2d 772, 775 (1990).
In Colonial American Nat’l Bank v. Kosnoski, 617 F.2d 1025 (4th Cir. 1980), a majority of the panel (Judges Bryan and Winter, Judge Murnaghan dissenting) ruled, that the words “every party” in Code § 49-26 include sureties. The opinion pointed out that the original 1794 statute was amended in 1849 to substantially its present form to require a creditor to institute suit against every party to the contract who is resident in Virginia and not insolvent. The opinion noted that the amendment would have been unnecessary if the General Assembly had intended that the guarantor could demand suit only against the principal. I agree with this construction of Code § 49-26.
The note of Springfield Associates, Inc. dated September 30, 1981, in the principal sum of $28,460.50 states that it was secured by a deed of trust on property identified as that of the Coursons. This reference, in my view, incorporated the deed of trust into the contract between principal and creditor. See High Knob Assoc. v. Douglas, 249 Va. 478, 487-88, 457 S.E.2d 349, 354-55 (1995).
Moreover, by letter dated May 9, 1984, Springfield Associates, Inc., and the Coursons reaffirmed the agreement, and the Coursons further verified that their residence remained as additional security “behind the corporate note.”
Having concluded that the Coursons were parties to the contract in question, it follows that I would hold that they could and did demand that suit be instituted against them as sureties. No such suit was instituted and I would hold that the Coursons did what was required of them and are now entitled to relief under Code § 49-26. For these reasons, I would reverse the judgment of the trial court and enter final judgment in favor of the Coursons.