## CIRCUIT COURT OF THE CITY OF ROANOKE

Joyce D. Crockett

v.

Steven Ray Waller-Smith et al.

January 15, 2004

Case No. CL03000799-00

BY JUDGE JONATHAN M. APGAR

This is a personal injury suit seeking damages for alleged medical negligence. The Defendants, Steven Ray Waller-Smith, M.D., Bryan Douglas Maxwell, D.O., Elwood Alexander Cobey, M.D., and Carilion Medical Center, d/b/a Carilion Roanoke Community Hospital, have filed a Special Plea in Bar, stating that a release signed by the Plaintiff precludes proceeding on the Plaintiff's Motion for Judgment. In response, the Plaintiff, Joyce D. Crockett, filed a Motion for Summary Judgment asking this Court to find that release void.[1] The Defendants counter this request by asserting that the release is not void because it does not violate Virginia Code § 8.01-425.1. In the alternative, if it does violate the statute, Defendants assert the release is merely voidable. For the following reasons, this Court finds that the release violates § 8.01-425.1 and is void and grants the Plaintiff's request to deny the Special Plea in Bar.

---

[1] Virginia Supreme Court Rule 3:18 does not apply to these particular pleadings, and the Court will treat the motion filed by the Plaintiff as a Response in Opposition to the Defendants' Special Plea in Bar.

*Facts*

On August 2, 2001, Ms. Crockett underwent a surgical procedure, which was performed by the Defendant health care providers at Carilion Roanoke Community Hospital. The Plaintiff asserts that, during this surgery, the Defendants negligently punctured the Plaintiff's small bowel and sigmoid colon. The Plaintiff remained at the Defendant Hospital until her release on August 31, 2001. During the time period from August 2nd to August 31st, the Plaintiff asserts that she underwent other surgeries in an attempt to correct the injuries resulting from the earlier surgery. On September 9, 2001, the Plaintiff was presented with, and signed, a release in connection with her earlier treatment and was paid $7,500.00. The Release begins with this language: "Whereas, on or about the 2nd day of August, 2001, and continuing through August 31, 2001, an accident or event occurred … which resulted in personal and/or bodily injuries and/or property damage to" the Plaintiff and her husband. The Release discharges any claim Ms. Crockett may have against Carilion Roanoke Community Hospital and Carilion Health System and its various employees arising from her injuries. At the time the Release was executed, the Plaintiff was not represented by counsel. The Release does not contain any language informing the Plaintiff of any right to rescind the agreement within three days of its execution.

*Analysis*

In 1999, the General Assembly enacted Virginia Code § 8.01-425.1, which states:

> When a claimant or plaintiff executes a release of liability as a condition of settlement in a claim or action for personal injury within thirty days of the incident giving rise to such claim, such claimant or plaintiff shall have a right of rescission until midnight of the third business day after the day on which the release was executed, provided that he was not represented by counsel when the release was executed, the rescission was made in writing to the person or persons being released, their representative, or insurance carrier, and the claimant returns to the person or persons being released any check or settlement proceeds received by the claimant prior to the rescission.

In 2000, the statute was amended and the following language was added: "A release of liability executed within thirty days of the incident giving rise to the claim for personal injury by a person who is not represented by counsel *shall*

contain a notice of the claimant's or plaintiff's right to rescind conspicuously and separately stated on the release." Va. Code § 8.01-425.1 (emphasis added).

In order to decide if a rescission clause was required by statute, the Court must determine if the execution of the Release falls within the thirty day time period of § 8.01-425.1. As a guide to this determination, the Court relies on the concept of the "continuing treatment" rule used in deciding when the statute of limitations begins to run in medical malpractice actions. *See, e.g., Justice v. Natvig,* 238 Va. 178, 180, 381 S.E.2d 8, 9 (1989). "[W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment ... the statute of limitations commences to run when the improper course of examination and treatment, if any, for the particular malady terminates." *Id.* (quoting *Farley v. Goode,* 219 Va. 969, 976, 252 S.E.2d 594, 599 (1979)). This Court holds that this continuing treatment rule answers the inquiry. Under this analysis, as Ms. Crockett's treatment was continuous from August 2, 2001, until August 31, 2001, the September 9, 2001, Release is within the thirty day time period and must comply with § 8.01-425.1.

Furthermore, the Release, by its own language, applies to injuries that occurred "on or about the 2nd day of August, 2001, and continuing through August 31, 2001." The Court will not allow the Defendants to claim that the Release is partially valid for any injuries incurred prior to August 9, 2001, and partially invalid for any injuries occurring on or after August 9, 2001. The Release explicitly covers a period of time that is within thirty days of September 9, 2001, the date that it was signed. Therefore, as Ms. Crockett was unrepresented at the time the Release was executed, a rescission clause was required by § 8.01-425.1.

The foregoing brings the Court to the key question that must now be resolved: Is a release that lacks a rescission clause as required by § 8.01-425.1 void or voidable? This Court finds that such a release is void. This question is one of first impression within Virginia and, while other states have similar statutes, none requires a rescission clause and, thus, are not helpful in answering this question. *See* Colo. Rev. Stat. § 13-21-301; Conn. Gen. Stat. § 52-572a; Ga. Code. Ann. § 51-1-35; Idaho Code § 29-113; Kan. Stat. Ann. § 60-2801; Me. Rev. Stat. Ann. tit. 17, § 3964; Md. Code Ann., Cts. & Jud. Proc. § 5-401.1; Mass. Gen. Laws ch. 271, § 44; N.M. Stat. Ann. § 41-1-1; N.D. Cent. Code § 9-08-08; 42 Pa. Cons. Stat. § 7101; R.I. Gen. Laws § 9-19-12; Vt. Stat. Ann. tit. 12, § 1076; W. Va. Code § 55-7-11a.

Virginia has long adhered to the "mischief rule" of statutory construction. *Rector & Visitors v. Harris,* 239 Va. 119, 124, 387 S.E.2d 772, 775 (1990);

*Board of Supervisors v. King Land Corp.*, 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989). According to this rule, "[e]very statute is to be read so as to 'promote the ability of the enactment to remedy the mischief at which it is directed'." *Board of Supervisors*, 238 Va. at 103, 380 S.E.2d at 897 (quoting *Natrella v. Board of Zoning Appeals*, 231 Va. 451, 461, 345 S.E.2d 295, 301 (1986)). The Supreme Court of Virginia went on to say that "[t]he ultimate purpose of all rules of construction is to ascertain the intention of the legislature, which, absent constitutional infirmity, must always prevail." *Board of Supervisors*, 238 Va. at 103, 380 S.E.2d at 897. Additionally, when remedial statutes are being interpreted, they are to be construed liberally in order to advance the remedy of the statute while stifling the mischief the statute seeks to prevent. *Id.* at 103, 380 S.E.2d at 898.

The purpose of § 8.01-425.1 is to protect plaintiffs and claimants who are without the benefit of counsel. For a short period of time, the statute safeguards these individuals by providing the opportunity to avoid a release executed within thirty days of an injury. The legislature realized that an injured plaintiff, for a variety of reasons, may be in a weaker bargaining position. This weaker position and lack of counsel may make these individuals more susceptible to any potential overreaching, coercion, or undue influence.

The 2000 Amendment, which added the second sentence stating that a rescission clause "shall" be included in the appropriate circumstances, is further evidence of this intent. By using "shall," the legislature made the inclusion of a rescission clause mandatory under the stated circumstances. *Id.* Through this amendment, the legislature endeavored to further protect these individuals by requiring that notice of the right to rescind be conspicuously and explicitly stated on a release.

The Defendants assert that the purpose of adding the second sentence was to insure that injured parties not represented by counsel were made aware of their right to rescind. Therefore, Defendants reason, Ms. Crockett had three days to rescind the Release from the date when she became *aware* of this right. The Defendants assert that at the latest, Ms. Crockett knew of her right to rescind on July 9, 2003, the date that Ms. Crockett's counsel sent a letter to defense counsel discussing the Release. As the Plaintiff did not rescind within three days of this date, the Defendants allege that the Release is valid and that the Plaintiff may not maintain her suit.

The Court finds these arguments unpersuasive and contrary to legislative intent. While the Defendants are correct in stating that the second statutory sentence was added for the purpose of providing plaintiffs with notice of their right to rescind, the Court cannot look to only one sentence in a code section when determining the intent of the entire section. Instead, the language of the

statute must be read together and viewed as a whole. In doing this, the Court reiterates that § 8.01-425.1 was created as a shield for injured parties. It is apparent that the limited interpretation advocated by the Defendants would, in the circumstances of this case, eliminate the protections that were to be provided by the statute. The Court will not follow a line of reasoning antithetical to the legislative intent. *See, e.g., Rector & Visitors*, 239 Va. at 124–25, 387 S.E.2d at 775–76.

Rather, the Court's decision must further the goal of protecting injured parties. The only possible way to fulfill this intent under these facts and circumstances is to find the Release void. If the Release were merely voidable, the Plaintiff would be without a remedy and the Defendants would be rewarded for drafting the Release in violation of § 8.01-425.1. However, holding that the Release is void will " 'suppress the mischief and advance the remedy,' as the legislature intended." *Board of Supervisors*, 238 Va. at 103, 380 S.E.2d at 898 (quoting *Shumate v. Commonwealth*, 56 Va. (15 Gratt.) 653, 661 (1860)).

Furthermore, a finding that the Release is void does not necessarily mean that the Defendants are liable. This decision only means that the Plaintiff will have the opportunity to pursue her case through the trial process. A final detail is that the Plaintiff must return the $7,500.00 to the Defendants. Based on the principles clearly elucidated by the Virginia Supreme Court (*see American-LaFrance & Foamite Indus., Inc. v. Arlington County*, 169 Va. 1, 192 S.E. 758 (1937)), as the Release is void, the Defendants never transferred ownership of the funds and their property must be returned. If necessary, counsel may arrange a hearing date to set a specific time for the return. Inability to promptly return the Defendants' money is not an impediment to the suit proceeding forward.