COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, O'Brien and Chaney
Argued at Lexington, Virginia


DALE A. HAPPE

OPINION BY
v.        Record No. 0588-22-3          JUDGE ROBERT J. HUMPHREYS
MAY 23, 2023

KATHRYN ZIMMERMAN


FROM THE CIRCUIT COURT OF FLOYD COUNTY
K. Mike Fleenor, Jr., Judge

Richard W. Davis, Jr. (Davis, Davis & Davis Attorneys, on briefs),
for appellant.

No brief or argument for appellee.


In January 2020, Kathryn Zimmerman obtained a two-year protective order against the

appellant, Dale Happe.  On Ms. Zimmerman's motion pursuant to Code § 19.2-152.10, the Floyd

County Circuit Court extended that protective order for an additional two-year period ending on

March 7, 2024.  Mr. Happe appeals from the circuit court's order extending the initial protective

order, arguing that the circuit court employed the wrong standard in evaluating

Ms. Zimmerman's motion, that the evidence was insufficient to prove that Mr. Happe posed a

threat to Ms. Zimmerman's health and safety, and that the circuit court erred in extending the

protective order to March 7, 2024, when the circuit court's letter opinion extended the order to

January 20, 2024.

BACKGROUND[1]

This Court takes the facts in the light most favorable to the prevailing party below, in this case, Ms. Zimmerman. In 2017, Ms. Zimmerman hired Mr. Happe as a lead carpenter for her company. In 2019, Mr. Happe was demoted from a full-time employee to a subcontractor due to his "lack of professionalism and incompetence." Following this demotion, Mr. Happe "began to display unprofessional and obsessive behavior." Mr. Happe started sending Ms. Zimmerman repeated text messages and emails in October 2019. In these communications, Mr. Happe professed his love for Ms. Zimmerman, described medication he was currently using and its effects on him, and offered to purchase a van for Ms. Zimmerman. Mr. Happe also made various references to Ms. Zimmerman's children and missing them. The medication that Mr. Happe was using was Kratom, which he indicated was being used to "get people off herion [sic] and meth." Mr. Happe also said that the "Kratom does get me higher than a kite. It's an opioid. Mix it with booze and really rock out." In his offer to purchase a van for Ms. Zimmerman, Mr. Happe explained that he wanted to buy a "new big blue van, just so I know it's you and your [sic] good!" Mr. Happe also appeared unannounced at Ms. Zimmerman's home when he knew her husband was out of town. Following this visit, Ms. Zimmerman informed Mr. Happe that she no longer wanted any communication with him.

Mr. Happe continued to send emails to Ms. Zimmerman. The circuit court determined in its review of the messages they "did not evince overt violent proclivity" but that the messages were clearly "inappropriate and unwarranted." In December 2019, Mr. Happe approached

[1] Portions of the record in the case now before this Court were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues Mr. Happe has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

Ms. Zimmerman in a grocery store and began publicly apologizing and following her as she exited the store without acknowledging him.

In January 2020, Ms. Zimmerman sought and obtained a protective order for two years. She also changed her phone number and email address to prevent Mr. Happe from contacting her. During the two years covered by the protective order, Mr. Happe did not have any verbal contact with Ms. Zimmerman. However, Ms. Zimmerman testified that she occasionally had non-verbal interaction with Mr. Happe during the two years. Ms. Zimmerman noted that every time she happened to see Mr. Happe, "there is absolute staring. . . . [I]t's just an intentional [']I'm still there at all times,['] make[s] his presence very, very noticeable." Though the record was not clear on how many times Ms. Zimmerman found Mr. Happe staring at her, she testified that on "[s]everal occasions I was at the bank where he's standing there loading his truck or doing whatever staring at me in my vehicle and my children in it." She also testified that Mr. Happe stared at her "loading my children in my car while I'm getting fuel." Finally, she testified that she saw Mr. Happe parked on the side of the road staring at her as she drove by.

Ms. Zimmerman filed a petition to extend the protective order in general district court, and the court granted her petition, extending the protective order to January 20, 2024. Mr. Happe timely appealed. The circuit court case commenced on March 8, 2022. At the hearing in circuit court, Ms. Zimmerman testified as to the above stated facts underlying the initial protective order and her encounters with Mr. Happe since the initial order. Mr. Happe moved to strike the evidence on the grounds that Ms. Zimmerman did not prove that she had been subject to an act of violence, force, or threat within a reasonable period of time and that she did not introduce any new evidence of Mr. Happe's conduct subsequent to the initial protective order. The circuit court denied the motion.

After Mr. Happe rested, he renewed his motion and the circuit court took the motion under advisement. The circuit court issued a letter opinion on March 21 denying Mr. Happe's motion and granting the extended protective order. In response to Mr. Happe's argument that Ms. Zimmerman was required to present new evidence, the circuit court ruled that the amendments to Code § 19.2-152.10 did not require that the court "focus[] its inquiry on whether respondent 'continues to pose a threat.'" The circuit court made an alternative ruling that "based on [Ms. Zimmerman's] testimony at the hearing on March 8, 2022, the Court finds sufficient grounds to extend the protective order 'to protect the health and safety of the petitioner.'" The circuit court noted in its letter opinion that the protective order was extended to January 20, 2024; however, the protective order entered by the circuit court extended to March 7, 2024. Mr. Happe now appeals.

ANALYSIS

Mr. Happe argues that the circuit court erred by employing the incorrect standard when it granted Ms. Zimmerman's motion. Mr. Happe also argues that Ms. Zimmerman did not introduce sufficient evidence that he continued to pose a threat to her and her family to permit the circuit court to extend the order. Finally, Mr. Happe argues that the circuit court erred by entering a protective order with a termination date different than the termination date listed in the circuit court's letter opinion.

I. The Standard for a Motion to Extend a Protective Order

"Permanent" protective orders are governed by both Code §§ 19.2-152.9 and -152.10. Code § 19.2-152.10(A) provides that,

> The court may issue a protective order pursuant to this chapter to protect the health and safety of the petitioner and family or household members of a petitioner upon (i) the issuance of a petition or warrant for, or a conviction of, any criminal offense resulting from the commission of an act of violence, force, or

- 4 -

threat or (ii) a hearing held pursuant to subsection D of
§ 19.2-152.9.

Subsection D of Code § 19.2-152.9 provides that the court may issue a protective order "pursuant to § 19.2-152.10 if the court finds that the petitioner has proven the allegation that the petitioner is or has been, within a reasonable period of time, subjected to an act of violence, force, or threat by a preponderance of the evidence." If the protective order was issued for a crime of violence, the court may issue a permanent protective order for "any reasonable period of time, including up to the lifetime of the defendant, that the court deems necessary to protect the health and safety of the victim." Code § 19.2-152.10(C). If the protective order was issued pursuant to a hearing held pursuant to Code § 19.2-152.9(D), then the court may issue the protective order for a maximum of two years. Code § 19.2-152.10(B).

Prior to 2010, there was no mechanism for a protective order petitioner to extend the order. The only way for a petitioner to continue to benefit from a protective order was to reinitiate the process. In 2010, the General Assembly amended Code § 19.2-152.10 to enable a petitioner to request the court enter an extended protective order. *See* 2010 Va. Acts chs. 425, 468 (codified as amended at Code § 19.2-152.10(B)). Under that amendment, a court may extend a protective order "for a period not longer than two years to protect the health and safety of the petitioner." *Id.* Code § 19.2-152.10(B) further explains that there is no limit to the number of extensions that may be requested or granted. The General Assembly did not articulate what standards the court should apply in determining whether to extend the order, however. Furthermore, there is no Virginia case law on what standard courts should apply in determining whether a petitioner for an extended protective order is entitled to that extension.

The appropriate standard for an extension of a protective order is a question of statutory interpretation which we review de novo. "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute."

*Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). "Consistent with this standard, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" *Banks v. Commonwealth*, 67 Va. App. 273, 282 (2017) (quoting *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007) (alteration in original)).

The plain language of Code § 19.2-152.10(B) indicates that so long as the court finds, by a preponderance of the evidence, that an extension of the protective order would "protect the health and safety of the petitioner," then the circuit court may extend the order. Whether a protective order would protect the health and safety of a petitioner is a fact-specific inquiry and the factors that a court must consider will necessarily vary depending on the facts and circumstances in each case.

Mr. Happe argues, however, that Code § 19.2-152.10(B) required Ms. Zimmerman to prove that she had been subjected to an act of violence, force, or threat within a reasonable period of time prior to seeking the extension. Mr. Happe contends that because the process to extend a protective order requires a hearing, that the only way the circuit court can grant a petition to extend is if that hearing is conducted pursuant to Code § 19.2-152.9(D). Accordingly, Mr. Happe argues, the petitioner must be required to prove that "the petitioner has proven the allegation that the petitioner is or has been, within a reasonable period of time, subjected to an act of violence, force, or threat by a preponderance of the evidence." We disagree.

First, as noted, the plain language of the statute imposes no requirement that the petitioner for an extended protective order prove that they were subjected to an act of violence, force, or threat within a reasonable period of time. We "assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute." *Jordan v. Commonwealth*, 295 Va. 70, 75 (2018) (quoting *Halifax*

- 6 -

*Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100 (2001)). "This Court may not construe the plain language of a statute 'in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not actually express.'" *Commonwealth v. Amos*, 287 Va. 301, 307 (2014) (quoting *Vaughn, Inc. v. Beck*, 262 Va. 673, 679 (2001)). The plain language of Code § 19.2-152.10(B) imposes no requirement that the petitioner prove that he or she was subjected to an act of violence, force, or threat within a reasonable period of time when seeking an extended protective order.

Additionally, Mr. Happe's interpretation would render the 2010 amendments to Code § 19.2-152.10 entirely superfluous. "We adhere to rules of statutory construction that discourage any interpretation of a statute that would render any part of it useless, redundant or absurd. Instead, we seek to read statutory language so as to give effect to every word." *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014). Under Mr. Happe's proposed standard, a petitioner for an extension of a protective order would be required to prove the exact same elements necessary to obtain an initial protective order. If that were the case, there would be no need for an extension provision as a petitioner could simply refile for a protective order. We do not presume that the General Assembly intended to enact meaningless legislation. The General Assembly created an alternative procedure for a petitioner to extend his or her protective order without needing to effectively restart the protective order process.

Relatedly, the protective order statutes are remedial and should be liberally construed to effectuate the purpose of the statute. "Every statute should be read so as to 'promote the ability of the enactment to remedy the mischief at which it is directed.' Remedial statutes are to be 'construed liberally, so as to suppress the mischief and advance the remedy.'" *See Rector & Visitors of the Univ. of Va. v. Harris*, 239 Va. 119, 124 (1990) (emphasis omitted) (quoting *Bd. of Supervisors v. King Land Corp.*, 238 Va. 97, 103 (1989)). The General Assembly determined

that the initial two-year period for protective orders may be insufficient to protect the health and safety of threatened persons and so provided a procedure to extend protective orders in such cases. Mr. Happe's proposed interpretation completely defeats the remedial purpose of the extension provision.

Instead, the plain language of the statute indicates that so long as the court finds, by a preponderance of the evidence, that an extension of the protective order would "protect the health and safety of the petitioner," then the circuit court may extend the order. Code § 19.2-152.10(B). Implicit in such a finding is that a petitioner is *not* entitled to an extension of a protective order if the evidence shows that the respondent poses no danger to the petitioner. In other words, if the respondent does not pose a threat to the petitioner, then a protective order would not protect the health and safety of the petitioner; the order would achieve nothing other than impose burdens on the respondent. A petitioner is not entitled to an extension of a protective order on demand; they must show that the presence of the protective order is necessary to protect their health and safety. Whether a protective order would protect the health and safety of a petitioner is a fact-specific inquiry, and the facts that a court should consider will necessarily vary depending on the facts and circumstances in each case.

Accordingly, we also reject Mr. Happe's argument that the circuit court erred by relying on the conduct underlying the initial protective order. The statute imposes no requirements on the nature of the evidence the petitioner must present in order to carry his or her burden. *See Johnson v. Commonwealth*, 58 Va. App. 625, 641 (2011) (expressing unwillingness to "judicially graft" requirements into statutes "under the subtle 'guise of judicial interpretation'" (first quoting *Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield*, 42 Va. App. 264, 280 (2004); and then quoting *Holly Hill Farm Corp. v. Rowe*, 241 Va. 425, 431 (1991))). The only question is whether, based on the totality of the circumstances, an extension of the

protective order would protect the health and safety of the petitioner. The nature and severity of the conduct that necessitated the initial protective order is a relevant consideration for the court to consider when determining whether an extension of a protective order will protect the health and safety of the petitioner.[2]

## II. The Sufficiency of the Evidence

Mr. Happe also argues that the circuit court erred in finding that Mr. Happe continues to pose a threat to Ms. Zimmerman. We read Mr. Happe's assignment of error as challenging the sufficiency of the evidence to extend the protective order. Mr. Happe argues that the circuit court based its determination that an extension was merited on the petitioner's subjective, and unreasonable, fear of bodily harm. When the sufficiency of the evidence is challenged on appeal, this Court will only reverse the judgment of the circuit court if the judgment is plainly wrong or there is no evidence in the record that supports the findings of the circuit court. *Glynn v. Kenney*, 77 Va. App. 70, 78 (2023).

Ms. Zimmerman, as the petitioner, had the burden to prove, by a preponderance of the evidence, that extending the protective order would protect her and her family members' health and safety. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prevailing party below, granting that party all reasonable inferences therefrom. *Id.* Mr. Happe repeatedly contacted Ms. Zimmerman despite her requests that he not do so. He sent her inappropriate messages, visited her home unannounced, and accosted her in a public place. After Ms. Zimmerman obtained the initial protective order, Mr. Happe continued to exhibit unusual behavior that indicates that he has not resolved his obsession with Ms. Zimmerman. He stared at Ms. Zimmerman and her children on multiple occasions while she

---

[2] Because Ms. Zimmerman *did* introduce some new evidence in this case, we need not decide whether a circuit court may extend a protective order based exclusively on the respondent's conduct underlying the initial order.

pumped gas, when she went to the bank, or when she drove down the road.  Additionally, neither Ms. Zimmerman nor Mr. Happe have relocated, and they both continue to live in the same town. In light of our deferential standard of review, we hold that the record supports the conclusion that extending the protective order would protect Ms. Zimmerman and her family's health and safety and find no error.[3]

### III.  The Termination Date of the Protective Order

Finally, Mr. Happe argues that the circuit court erred by extending the protective order to March 7, 2024, when the letter opinion only extended the order to January 20, 2024.[4]  "It is well-established that a court speaks only through its written orders."  *S'holder Representative Servs., LLC v. Airbus Americas, Inc.*, 292 Va. 682, 690 (2016).  When written orders conflict with a letter opinion, "we presume that the orders accurately reflect what transpired."  *Waterfront*

---

[3] The dissent contends that "because the trial court construed Code § 19.2-152.10 to permit extending a protective order *without* showing additional evidence that Happe continued to *pose a threat* to Zimmerman, the record does not include a trial-court finding that these few sightings are sufficient to show that Happe poses a *continuing threat* to Zimmerman."  *Infra* at 16 (emphasis supplied).  Aside from the fact that the dissent misstates the actual ruling of the trial court in this regard, the dissent also ignores the circuit court's alternative ruling.  The circuit court held that Ms. Zimmerman provided "sufficient grounds to extend the protective order 'to protect the health and safety of the petitioner.'"  As noted, such a finding *necessarily* required the circuit court to conclude that extending the protective order *would actually* protect the health and safety of the petitioner, i.e., that Mr. Happe continued to pose a threat to Ms. Zimmerman and/or her family.

[4] Code § 19.2-152.10(B) permits a circuit court to "extend the protective order for a period not longer than two years."  The initial protective order in this case expired at some point in January 2022.  Mr. Happe has not challenged the circuit court's authority to extend the protective order to a time greater than two years from the date of the expiration of the initial protective order.  Mr. Happe's assignment of error only contends that "the trial court erred in entering a protective order to March 7, 2024 when the letter opinion extended the petitioner's protective order only to January 20, 2024."  Our Supreme Court has held that "[a]n assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal.  Assignments of error are the *core* of the appeal."  *Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017).  Accordingly, we do not rule on whether the circuit court had the authority to extend the protective order to March 7, 2024.

*Marine Constr., Inc. v. N. End 49ers Sandbridge Bulkhead Grps. A, B & C*, 251 Va. 417, 427 n.2

(1996).  As such, we find no error in the circuit court's order extending the protective order to

March 7, 2024.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*

Chaney, J., dissenting.

While I agree with the majority that Code § 19.2-152.10 authorizes granting petitioner (Zimmerman) an extension of a protective order imposed on respondent (Happe) only when the respondent is found to pose a continuing threat to the petitioner, I disagree with the majority's contention that the trial court found that Happe continues to pose a threat to Zimmerman. The trial court granted the protective order extension after *expressly rejecting* the contention that it was required to find that Happe continued to pose a threat to Zimmerman. Importantly, Code § 19.2-152.7:1 limits the continuing *threat* to an act that puts Zimmerman in "*reasonable apprehension of death, sexual assault, or bodily injury.*" (Emphasis added). In addition, the trial court, without authority, extended the original protective order to a date more than two years from the expiration date of the original protective order. The majority holds that in drawing attention to the conflict between the trial court's opinion letter and the trial court's final order containing the erroneous expiration date, Happe's assignment of error is limited to an argument that the opinion letter trumps the subsequent final order. Because I disagree with the majority, I would remand to the trial court to determine whether Happe continues to pose a threat to Zimmerman that puts Zimmerman in reasonable apprehension of death, sexual assault, or bodily injury, and direct the trial court to limit any extension of the protective order to a maximum of two years from the expiration of the original protective order. Therefore, I respectfully dissent.

In this appeal, Happe challenges the trial court's extension of a protective order under Code § 19.2-152.10, which authorizes the issuance of a protective order upon proof that a petitioner has, within a reasonable period of time, been subject to an act of violence, force, or

threat.[5]  "The court may extend the protective order for a period not longer than two years to protect the health and safety of the petitioner or persons who are family or household members of the petitioner at the time the request for an extension is made."  Code § 19.2-152.10(B). Happe contends that the trial court erroneously construed Code § 19.2-152.10 to allow for granting an extension without any new or additional supporting evidence.  Happe also assigns error to the trial court extending the protective order to March 7, 2024, a date more than two years after the expiration of the original protective order, noting that the trial court's own opinion letter stated an earlier date of January 20, 2024.

As the majority holds, Code § 19.2-152.10 only authorizes the extension of a protective order if the respondent continues to pose a threat to the petitioner at the time the extension is requested.  However, disregarding the trial court's *express* holding that it was not required to find that Happe continues to pose a threat to the petitioner (Zimmerman), the majority asserts that the trial court nonetheless *necessarily* found that Happe "continued to pose a threat" to Zimmerman when the trial court extended the protective order *to protect the health and safety* of Zimmerman.  Continuing with its appellate fact-finding, the majority further asserts that Happe "has not resolved his obsession with Ms. Zimmerman," despite there having been no such finding by the trial court, and despite there being nothing in the record to support a *reasonable* inference that Happe continues to be *obsessed* with Zimmerman.

---

[5] Under Code § 19.2-152.7:1,

> "Act of violence, force, or threat" means any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury.  Such act includes, but is not limited to, any forceful detention, stalking, criminal sexual assault in violation of Article 7 (§ 18.2-61 et seq.) of Chapter 4 of Title 18.2, or any criminal offense that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury.

After examining legislative history, the trial court expressly held that Code § 19.2-152.10 authorizes the extension of a protective order to protect the health and safety of the petitioner *without* any requirement to show that Happe *continues to pose a threat* to Zimmerman. The trial court noted that the General Assembly did not adopt an amendment that would have *expressly* required finding that the respondent "continues to pose a threat." As enacted, without *express* reference to any threat posed by the respondent, Code § 19.2-152.10 authorizes an extension to "protect the health and safety of the petitioner or the petitioner's family at the time the request for an extension is made." Based on the legislative history, the trial court opined that the statutory emphasis on the *health and safety* of the petitioner permitted the trial court to grant an extension solely to *maintain the status quo*. Accordingly, in granting the extension, the trial court expressly made the following findings: (1) Zimmerman continues to be fearful based on the conduct that led to the imposition of the original protective order, (2) Happe "stared in [Zimmerman's] direction" on occasions when Zimmerman saw Happe in public places, (3) Happe made no effort to contact Zimmerman since the imposition of the original protective order, and (4) Happe and Zimmerman reside in the same small community without any material change in circumstances. In making these findings, the trial court did not address whether Happe's conduct put Zimmerman in reasonable apprehension of death, sexual assault, or bodily injury at the time the request for an extension was made.

As the majority holds, even though Code § 19.2-152.10 contains no *express* requirement that a protective order extension is conditioned on the respondent posing a continuing threat to the petitioner, that requirement is implied by the requirement that the extension *protect* the health and safety of the petitioner *at the time the request for an extension is made*. If the respondent poses no threat to the petitioner that would put the petitioner in reasonable apprehension of death, sexual assault, or bodily injury, the protective order could not be reasonably said to

- 14 -

*protect* the petitioner from that threat. Because the statute requires that the extension protect the health and safety of the petitioner *at the time the request for an extension is made*, it follows that an extension is authorized only if the respondent continues to pose a threat to the petitioner that places the petitioner in reasonable apprehension of death, sexual assault, or bodily injury at the time the request for an extension is made.

In this case, as found by the trial court, the allegedly threatening conduct supporting the *original* protective order consisted almost entirely of undesired and inappropriate *communications* by email, phone voice mail, and text message. The inappropriate communications related to Happe's desire to have a relationship with Zimmerman, his former employer, and included a few undesired in-person encounters. The trial court also found that Zimmerman had changed her phone number and email address. The record contains *no evidence* that Happe knows or has attempted to learn Zimmerman's new contact information, and the trial court expressly found that Happe has made no effort to contact Zimmerman since the imposition of the original protective order. Thus, the record does not support a finding that Happe poses a *continuing* threat of undesired email, text, or phone communications that would put Zimmerman in reasonable apprehension of death, sexual assault, or bodily injury. Even though the conduct supporting the *original* protective order also included a few undesired in-person encounters, the trial court made no finding that those encounters, without Happe's persistent email, text, and phone communications, would have put Zimmerman in reasonable fear of death, sexual assault, or bodily injury.

Because the record does not support a finding that the *threat from the original conduct* supporting the original protective order is *continuing*, Zimmerman was required to produce evidence of additional conduct to prove the implicit statutory requirement that Happe poses a continuing threat to Zimmerman that places her in reasonable apprehension of death, sexual

assault, or bodily injury at the time her request for an extension was made in order to obtain an extension. At the hearing on her petition for an extension of the protective order, Zimmerman alleged that, on a few occasions after the imposition of the original protective order, while at various locations in the small community where they both live, she noticed Happe staring at her and her family from a distance, which made her feel fearful. The trial court noted that because Happe and Zimmerman continue to live in the same town, it is possible that they will be within sight of each other in the future. However, because the trial court construed Code § 19.2-152.10 to permit extending a protective order *without* showing additional evidence that Happe continued to *pose a threat* to Zimmerman, the record does not include a trial-court finding that these few sightings are sufficient to show that Happe poses a *continuing threat* to Zimmerman that puts Zimmerman in reasonable apprehension of death, sexual assault, or bodily injury. Moreover, because the protective order bars Happe from having *any contact* with Zimmerman or Zimmerman's family—on pain of fine and imprisonment—the protective order itself *requires* Happe to be vigilantly mindful of Zimmerman and Zimmerman's family whenever Happe and Zimmerman happen to see each other in the small town where they both live to avoid the risk of contact.

Despite implicitly acknowledging that the trial court applied the wrong legal standard in granting the protective order extension, the majority concludes that the trial court's finding that the protective order extension protects Zimmerman's health and safety *necessarily* includes a finding that Happe poses a continuing threat to Zimmerman. That conclusion is contradicted by the trial court's express statement that no such finding is required, coupled with the trial court's express reliance on Zimmerman's fearfulness, without connecting that fearfulness to any *continuing threat* posed by Happe. Instead of making the required factual finding that Happe continues to pose a threat to Zimmerman, the trial court stated that it extended the protective

order to maintain the status quo established by the original protective order. Although the trial court also noted Zimmerman's allegations that Happe stared at Zimmerman on a few occasions when both were in sight of each other in public, and at a distance, in the same small town where they both live, the trial court did not find that those incidents showed that Happe posed a continuing threat to Zimmerman that would place Zimmerman in reasonable apprehension of death, sexual assault, or bodily injury. The absence of such a trial court finding is significant because, as conceded by the majority, whether Happe poses a continuing threat to Zimmerman is a *fact-specific inquiry*. Rather than resolve that fact-specific inquiry on appeal by finding facts unsupported by the record, for example, that Happe "has not resolved his obsession with Ms. Zimmerman," this Court should properly remand to the trial court to apply the correct legal standard and determine whether the few alleged staring incidents coupled with any continuing threat posed by the few in-person encounters that occurred in 2019—and prior to the original protective order—*pose a continuing threat* to Zimmerman sufficient to extend the protective order consistent with the requirements of Code § 19.2-152.10 that the threat be sufficient to put Zimmerman in reasonable apprehension of death, sexual assault, or bodily injury.

I would also hold that the trial court, on de novo appeal from the general district court, had no power or authority to extend the protective order to a date later than two years from the expiration date of the original protective order. Code § 19.2-152.10 provides that to obtain an extension, a petitioner *must* request the extension before a protective order expires. Thus, if a protective order expires, an extension is unavailable. Moreover, an extension may be granted only for a maximum period of two years. Because an extension must be granted based on a protective order that has not expired, and the extension cannot be granted for more than two years, the trial court was without authority to grant an extension of a protective order expiring on January 20, 2022, to later than January 20, 2024.

Contrary to the majority, the fact that Happe identified a discrepancy in the record to support his claim that the March 2024 expiration date was erroneous does not reduce Happe's assignment of error to a mere battle of conflicting records in which the erroneous date specified in the trial court's order prevails solely by virtue of its pedigree. Instead, Happe's express mention of the January 2024 expiration date stated in the trial court's opinion letter is reasonably interpreted to show that the record supports the correction sought. Accordingly, I would hold that, on remand, if the trial court finds that the record supports a finding that Happe poses a continuing threat to Zimmerman sufficient to justify imposing a protective order on Happe, any extension granted should be set to expire no later than January 20, 2024.

For these reasons, I respectfully dissent.