UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Callins, White and Bernhard
Argued at Williamsburg, Virginia

MARC GARVIN

v.      Record No. 0661-24-1

LBAS, INC.

MEMORANDUM OPINION[*] BY
JUDGE DAVID BERNHARD
OCTOBER 21, 2025

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Tanya Bullock, Judge

Lenard Myers, II (Fortress Proprietas, P.C., on brief), for appellant.

Christopher T. Holinger (Davis, Burch, & Abrams, on brief), for appellee.

Marc Garvin appeals the Circuit Court of the City of Virginia Beach's dismissal of his

Virginia Consumer Protection Act (VCPA) claim against LBAS, Inc.[1]  In his first assignment of

error, Garvin argues that the trial court erred in ruling that the vehicle safety inspection conducted

by LBAS was not part of a "consumer transaction" under the VCPA because it was paid for by the

car dealer who sold Garvin the vehicle in question.  Garvin contends that the proper legal test is

whether the inspection influenced his decision to purchase the vehicle, thereby making it

sufficiently connected to a consumer transaction under the VCPA.  In his second assignment of

error, Garvin argues that the trial court erred in holding that because vehicle safety inspections are

required by law and governed by state regulations, LBAS is exempt from liability under the VCPA.

He advances that LBAS's role extended beyond performing the inspection to making alleged

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 59.1-196 et seq.

misrepresentations concerning the vehicle's condition that facilitated its sale. Such conduct, he argues, is not authorized by any law or regulation, falls outside the statutory exclusion invoked by LBAS, and is actionable under the VCPA.

In dismissing Garvin's VCPA claim, the circuit court erred in two respects. First, it treated the absence of contractual privity between Garvin and LBAS as dispositive, thereby foreclosing liability under the Act. Yet Code § 59.1-200, which prohibits specified practices "in connection with a consumer transaction," contains no privity requirement, and ample persuasive authority confirms that liability is not limited to contracting parties. Instead, the proper inquiry is whether the challenged conduct was "in connection with" a consumer transaction. Second, on a motion to dismiss a warrant in debt, functionally akin to a demurrer under guiding precedent, the court adopted LBAS's factual assertions and erroneously applied a blanket exclusion under Code § 59.1-199(1). It concluded that all inspections are exempt because they are "authorized and regulated" by law. That ruling miscasts the statute, which exempts only "any aspect of a consumer transaction which aspect is authorized" by law, and does not immunize conduct outside the scope of authorization, such as a fraudulent inspection certification. The court thus mistakenly resolved LBAS's claimed exemption categorically, rather than on an evidentiary record addressing whether particular conduct was authorized.

Accordingly, the circuit court's judgment must be reversed and the case remanded for further proceedings consistent with this opinion.

BACKGROUND

Garvin initially filed his warrant in debt case in the Virginia Beach General District Court on April 29, 2022, alleging LBAS violated the VCPA by making misrepresentations regarding a vehicle's ability to pass inspection. On July 21, 2022, Garvin supplemented his filing with a bill of particulars, along with supporting documentation.

- 2 -

The bill of particulars alleged LBAS "is licensed by the Virginia State Police to conduct Virginia State Safety Inspections of automobiles and sells such services to the public as part of its business." On October 2, 2020, LBAS inspected a vehicle owned by Auto House in exchange for $20. Garvin alleged LBAS "issued a certificate and window decal, both representing to anyone who read either or both that the [v]ehicle passed a Virginia State Safety Inspection and that it was safe to operate on the roads." Garvin observed the decal which was "affixed to the [v]ehicle's windshield," as well as "the corresponding State Inspection Certificate." In determining whether to purchase the vehicle, Garvin relied upon the "representations made by the Inspector" through the certificate and decal. On October 3, 2020, Garvin bought the vehicle from Auto House for $10,502.49. "Subsequent to purchase, [Garvin] was advised he should contact the Virginia State Police because the [v]ehicle was not safe and 'the [v]ehicle should not have passed inspection' due to a. Missing Catalytic Converter; b. Illegal Turbo Charger; c. Illegal Exhaust Pipe; and d. Illegal headers." Garvin alleged "it will take no less than $10,000 to repair the [v]ehicle" and that he incurred $1,278.16 in storage expenses." According to the bill of particulars, had Garvin known about the actual condition of the vehicle, he would not have purchased it.

In its grounds of defense, LBAS moved to dismiss Garvin's claim and asserted the VCPA was inapplicable, because LBAS did not have any direct dealings with Garvin and instead only performed the inspection for a third-party dealer. As such, LBAS argued no consumer transaction took place between Garvin and LBAS. On December 5, 2022, the general district court dismissed the case, and Garvin appealed to the Circuit Court of the City of Virginia Beach on December 27, 2022.

The circuit court set trial for January 30, 2024, and heard multiple preliminary motions on that day. The court, however, continued the trial and invited the parties to "submit briefs

- 3 -

regarding the Plaintiff's theory of recovery in order to assist the Court with narrowing the issues." The court subsequently described in a letter opinion that the parties were requested to submit briefs regarding "the issue of whether a legal claim exists that applies to the facts of this matter and would provide a relief against [LBAS]." In accordance with the trial court's continuance order, both parties submitted briefs regarding LBAS's motion to dismiss. In its motion to dismiss brief before the circuit court, LBAS newly argued the VCPA did not apply because state inspections are authorized and regulated under Virginia law, and thus are exempt from the VCPA. On March 14, 2024, the trial court issued a letter opinion based solely on the parties' briefs.[2] The trial court found that Garvin presented no valid legal claim under the VCPA against LBAS, as the service performed by LBAS does not fall under the definition of a "consumer transaction" and the state inspection is exempted from the VCPA. On March 25, 2024, the trial court entered the final order incorporating its findings from the letter opinion. Garvin objected to the dismissal of the VCPA claim.

ANALYSIS

Resolution of Garvin's appeal requires this Court to apply the appropriate standard of review to the trial court's grant of LBAS's motion to dismiss, to properly construe the VCPA, and to determine whether Garvin's claim is barred by lack of privity or statutory exclusion.

---

[2] In its letter opinion, the trial court relied in part on facts contained only in LBAS's brief in support of the motion to dismiss, rather than in Garvin's bill of particulars. The court adopted from LBAS's motion details regarding Trooper Shaffer's reinspection of the vehicle, as well as the following additional facts:

- Auto House purchased the vehicle from an auction.
- After the inspection, "Auto House sold the [v]ehicle to Plaintiff, Marc Garvin, 'as is' with no warranty" on October 3, 2020.
- "At the time of the sale, the [v]ehicle had approximately 138,780 miles on it. Within two weeks, the [v]ehicle began exhibiting problems, and on October 15, 2020, Auto House refunded $500 to Plaintiff in consideration of the issues with the [v]ehicle."
- "LBAS never performed any work on the [v]ehicle for Plaintiff and has no relationship with Plaintiff."

- 4 -

*I. Standard of Review and Construing the VCPA*

This appeal arises from a warrant in debt action heard de novo in the Circuit Court of the City of Virginia Beach. In a warrant in debt case, a plaintiff files a state form entitled "Warrant In Debt" in a Virginia general district court. This form does not provide space for detailed allegations. In such cases,

> The judge of any General District Court may require the plaintiff to file and serve a written bill of particulars and the defendant to file and serve a written grounds of defense within the periods of time specified in the order so requiring; the failure of either party to comply may be grounds for awarding summary judgment in favor of the adverse party. Upon trial, the judge may exclude evidence as to matters not described in any such pleading.

Rule 7B:2. This rule hence provides the factual parameters (i.e., the allegations in the bill of particulars and the documents attached thereto) for what the plaintiff is allowed to prove.

A motion to dismiss arguing that a plaintiff's pleading fails to state a cause of action "is equivalent or analogous to a demurrer." *Fisher v. Globe Brewing Co.*, 170 Va. 509, 514 (1938) (quoting *Rosenberg v. U.S. Fid. & Guar. Co.*, 115 Va. 221, 224 (1913)). Because the motion to dismiss here challenged the legal sufficiency of Garvin's pleading, this Court must apply the standard of review for demurrers. An appellate court "reviews a circuit court's decision to sustain a demurrer de novo." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). The court "accept[s] as true all factual allegations expressly pleaded in the complaint and interpret[s] those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). "A court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are part of the pleadings." *Schaecher v. Bouffault*, 290 Va. 83, 107 (2015). The court "considers not only the pleadings, but also the documents attached thereto." *Mansfield v. Bernabei*, 284 Va. 116, 121

- 5 -

(2012). Under this standard, this Court considers only the allegations contained in the instant bill of particulars and the documents attached.

Turning to issues of statutory construction, those are also reviewed de novo. *Davis v. MKR Dev., LLC*, 295 Va. 488, 492 (2018). "[C]ourts 'ascertain and give effect to the intention of the legislature.' That intent is usually self-evident from the words used in the statute. Consequently, courts apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result." *Commonwealth v. Barker*, 275 Va. 529, 536 (2008) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 (2006)). "Remedial statutes are to be 'construed liberally, so as to *suppress the mischief* and advance the remedy' in accordance with the legislature's intended purpose." *H. D. Oliver Funeral Apts. v. Dignity Funeral Servs.*, 964 F. Supp. 1033, 1039 (E.D. Va. 1997) (quoting *Rector & Visitors of Univ. of Va. v. Harris*, 239 Va. 119, 124 (1990)); *see also NC Fin. Sols. of Utah, LLC v. Commonwealth ex rel Herring*, 299 Va. 452, 462 (2021) ("We construe remedial legislation liberally in favor of the injured party." (quoting *Ballagh v. Fauber Enters., Inc.*, 290 Va. 120, 125 (2015))).

"[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law." *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014). Specifically, the legislature intended that the VCPA "be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Code § 59.1-197.

II. *Whether the VCPA Can Apply to Transactions Involving "Upstream" Entities*

Garvin argues the circuit court erred in focusing solely on the sale of the inspection as the relevant transaction for determining whether LBAS could be held liable under the VCPA. Neither party disputes that a consumer transaction occurred between Garvin and Auto House. LBAS, however, does dispute whether the inspection was performed "in connection with" the purchase

of the vehicle, thus subjecting an "upstream" entity that had no interaction with the end consumer to VCPA liability. The relevant transaction, according to Garvin, was his purchase of the vehicle from Auto House. Garvin maintains that in connection with the consumer transaction, he relied on the inspection certificate and decal in purchasing the vehicle and suffered damages. He argues that, as a result of such reliance and ensuing damages, there is a nexus between LBAS, an "upstream" entity, and himself such that LBAS is subject to liability under the VCPA. LBAS counters that there is no authority supporting the proposition that a nexus is created once reliance and damages are satisfied. Additionally, LBAS argues it cannot be held liable because it is not a supplier.

The VCPA prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Code § 59.1-200. Specifically, suppliers are prohibited from "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Code § 59.1-200(A)(14). There are six definitions of "consumer transaction," but only the following definition is here applicable: "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." Code § 59.1-198.

Despite Garvin's pleaded allegation that the relevant transaction was the purchase of the vehicle, and that the inspection occurred in connection with that consumer transaction, the circuit court instead focused solely on the sale of the inspection between LBAS and Auto House. In its letter opinion, the circuit court found that the relevant service was LBAS's inspection that "was provided for resale of the vehicle, which is a commercial purpose rather than a personal, family, or household purpose, and, as such it is not within the definition of a consumer transaction." In effect, the circuit court defined the operative transaction as one confined by privity. Because the inspection was provided to Auto House, a commercial entity, the circuit court appeared to

conclude that by definition, this could not be a consumer transaction. The court erred in stopping there. The statutory scheme does not impose a privity requirement but instead concentrates on the nature of participation in a consumer transaction.

Holding that an "upstream" entity can never be held liable under the VCPA, as the trial court effectively did, would render the words "in connection with a consumer transaction" meaningless. The plain meaning of "in connection with" is "in relation to (something)." *In connection with*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/in%20connection%20with (last visited Oct. 20, 2025). It is not privity that is the limiting principle here but rather whether LBAS's conduct is foreseeably "in connection with" a consumer transaction, in this case by enabling it. This principle that privity is not required to maintain a VCPA claim is supported by persuasive authority from at least four federal district courts applying Virginia law and two Virginia circuit courts. *See Alexander v. Southeastern Wholesale Corp.*, 978 F. Supp. 2d 615, 622 (E.D. Va. 2013) ("holding that a direct sale to a consumer is not required for the transaction to be covered by the VCPA"); *Branin v. TMC Enters., LLC*, 832 F. Supp. 2d 646, 650 (W.D. Va. 2011) (holding that the VCPA applied to the sale of a vehicle with a defective odometer from a dealer to another when selling dealer "knew or should have known that the car was likely to be resold to a consumer to be used for personal purposes"); *Blount v. Greenbrier Pontiac Oldsmobile -- GMC Trucks Kia, Inc.*, No. 3:08CV622, 2009 U.S. Dist. LEXIS 69117, at *3-4, 14-18 (E.D. Va. Aug. 7, 2009) (holding allegations that the sale of a stolen vehicle occurred through the use of a cloned vehicle identification number, that up to nine automobile dealers either falsified documents or failed to properly title the vehicle upon transfer of ownership, that the dealers acted with fraudulent intent as to title documents and odometer disclosure statements, and that plaintiff detrimentally relied on those documents, resulting in the loss of both the vehicle and his trade-in vehicle, were sufficient to withstand a motion to dismiss

a VCPA claim); *Harris v. Universal Ford, Inc.*, No. 3:00CV693, 2001 U.S. Dist. LEXIS 8913, at *3-4, *15-16 (E.D. Va. Feb. 5, 2001) (holding that the VCPA covered the sale of a vehicle from a dealer who provided documentation that failed to disclose the extent of the vehicle's damage to another dealer who then sold it to an individual consumer, because the selling dealer "had to foresee that the vehicle in question would end up back in the hands of a consumer"); *Kieft v. Becker*, 58 Va. Cir. 171, 176 (Fairfax 2002) (holding that "[t]o limit the scope of" the VCPA "by applying the concept of privity given the expansive listing of fraudulent practices would seem to be inappropriate"); *Merriman v. Auto Excellence, Inc.*, 55 Va. Cir. 330, 331 (Richmond City 2001) (finding that the VCPA's language of "in connection with" and definitions of "consumer transaction" and "supplier" "do[] not seem to limit protection only to those transactions that occur directly between a supplier and the ultimate consumer" and thus the VCPA can cover transactions between suppliers).[3]

LBAS also asserts that it cannot be held liable under the VCPA because it is not a supplier. Contrary to LBAS's argument, because the motion to dismiss at issue is akin to a

---

[3] One Virginia trial court has recognized inspector VCPA liability in practice on facts analogous to this case. In *Fitch v. Phantom Auto Grp., LLC*, No. 0163-24-4, slip op. at 7, 2025 Va. App. LEXIS 463, at *10 (Aug. 12, 2025), a jury held a Virginia state vehicle inspector liable under the VCPA, awarding the plaintiff damages of $11,500, the full purchase price of the vehicle. The *Fitch* case involved similar circumstances to those in the case at bar: a consumer purchased a used vehicle from a dealer relying on a state inspection certificate and decal, only to discover the vehicle had defects that should have caused it to fail inspection. *Id.*, slip op. at 5-6, 2025 Va. App. LEXIS 463, at *7-8. The inspector admitted to a Virginia State Police trooper that "sometimes he does not raise the vehicle high enough" to comply with inspection manual requirements, and the trooper determined the vehicle "would fail Virginia inspection" if done properly. *Id.*, slip op. at 6, 2025 Va. App. LEXIS 463, at *7-8. On appeal, the inspector challenged the exclusion of a witness's testimony and the award of attorney fees, but did not contest privity, his status as a "supplier," or the applicability of Code § 59.1-199(1). In affirming the verdict, this Court therefore did not address these issues. *Id.*, slip op. at 33-34, 2025 Va. App. LEXIS 463, at *49-52. *Fitch* is further differentiated from the instant case because LBAS has not maintained in its grounds of defense that its relationship with its inspector was structured solely as that of an independent contractor. *Cf.*, *id.*, slip op. at 11, 2025 Va. App. LEXIS 463, at *15.

demurrer, this Court need only determine whether Garvin pleaded sufficient facts alleging LBAS is a supplier and not whether LBAS is ultimately proven to be a supplier. A "supplier" is "a seller, lessor, licensor, or professional that advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor that advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions." Code § 59.1-198. In the bill of particulars, Garvin alleged LBAS "is licensed by the Virginia State Police to conduct Virginia State Safety Inspections of automobiles and sells such services to the public as part of its business." Garvin further alleged the "misrepresentations violate the Virginia Consumer Protection Act," Code § 59.1-200(A)(14), "due to the misrepresentations made by Defendant in connection to a consumer transaction between Plaintiff and the dealership in the purchase of the [v]ehicle." From these two contentions, Garvin is intrinsically maintaining LBAS is a supplier whose liability stems from acting "in connection with" a consumer transaction. By providing a service required for a dealership to sell the vehicle, LBAS is alleged to have facilitated the sale of the car.

Because absence of privity is not an automatic bar to suit under the VCPA, and Garvin sufficiently alleged that LBAS is a supplier who acted in connection with a consumer transaction, his claim was legally sufficient to survive demurrer. Accordingly, the circuit court erred in dismissing his VCPA claim based on absence of contractual privity between LBAS and Garvin.[4]

III. *Whether LBAS Is Categorically Exempt from Liability Because Vehicle Safety Inspections Are Authorized and Regulated by Statute*

Under his second assignment of error, Garvin asserts the circuit court erred in finding that because the performance of vehicle safety inspections is required by law and governed by state

---

[4] The circuit court did not address the supplier issue in its ruling.

regulations, LBAS is exempt from the VCPA pursuant to Code § 59.1-199(1). He avers the circuit court should have instead focused on the misrepresentations made by LBAS as the relevant conduct for determining LBAS's liability under the VCPA. Garvin posits that because misrepresentations are not authorized by any law or regulation, the VCPA applies. LBAS responds that it is exempt from the VCPA because vehicle inspections are authorized by Virginia law. LBAS further contends that "the regulated/authorized distinction is meaningless in this case" because it "never argued that it can avoid VCPA liability simply because inspections are 'regulated.'" Rather, LBAS asserts that "vehicle inspections are exempt from VCPA coverage because they are *authorized* by statute."

The General Assembly's choice of the term "authorized" in Code § 59.1-199(1) is deliberate and distinct from the broader concept of being "regulated." To "authorize" means "to endorse, empower, justify, or permit by or as if by some recognized or proper authority." *Authorize*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/authorize (last visited Oct. 20, 2025). By contrast, to "regulate" means "to govern or direct according to rule; to bring under the control of law or constituted authority." *Regulate*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/regulate (last visited Oct. 20, 2025). Thus, regulation refers to oversight and governance, while authorization connotes affirmative approval or sanction. A person given "authorization" has the "official permission to do something." *See Authorization*, *Black's Law Dictionary* (12th ed. 2024). Reading "authorized" to mean merely "regulated" would collapse the distinction and effectively exempt all regulated conduct from the VCPA, contrary to the statute's plain language and remedial purpose.

In addition, the deliberate repetition of the word "aspect" in Code § 59.1-199(1) is meaningful. It signals the General Assembly's intent to tailor narrowly the exclusion to discrete, identifiable components of a consumer transaction, rather than to exempt entire categories of conduct or entire transactions simply because they occur within a regulated field. By using

- 11 -

"aspect" initially, the statute makes clear the exclusion does not apply to the full scope of a "consumer transaction," but only to a specific part or function within it. The second use, "which aspect is authorized," emphasizes that even within the consumer transaction, only that particular action which is affirmatively authorized by law or regulation is excluded from VCPA coverage. This layered limitation confines the exclusion to a narrow slice of conduct: not all regulated actions, and not the transaction as a whole, but only that distinct portion which is both part of the consumer transaction and expressly authorized. Thus, when an inspector performs all required steps of a vehicle inspection in accordance with applicable laws and regulations, that conduct may constitute an "authorized aspect" of a consumer transaction to which the VCPA does not apply. The analysis, however, changes where the conduct falls outside what the law affirmatively authorizes, such as when the inspector fails to perform the inspection altogether. In that circumstance, the conduct is not an authorized aspect of the transaction and therefore does not fall within the statutory exclusion.

Although § 46.2-1157 itself is not included in the laundry list of prohibited practices provided in § 59.1-200(A), the General Assembly does not appear to have intended that inspections be per se excluded from VCPA liability. Subsections (5) and (6) of § 59.1-200(A), for example, may encompass violations of inspection statutes. If the General Assembly wanted *categorically* to exempt vehicle inspectors from the VCPA, it would have done so as it did for other specific categories of activity. *See, e.g.*, Code § 59.1-199(3) (those aspects of a consumer transaction that are regulated by the Federal Consumer Credit Protection Act); § 59.1-199(4) (insurance companies and financial institutions that are already regulated by either the State Corporation Commission or a comparable federal regulating body); § 59.1-199(6) (real estate licensees); § 59.1-199(7) (residential home sales between natural persons involving the seller's private residence).

- 12 -

Section 59.1-199(1) "does not exempt entire industries from the Act, rather it exempts claims arising from certain transactions that are already covered by a Virginia or federal law." *Beaty v. Manor Care, Inc.*, No. 02-1720-A, 2003 U.S. Dist. LEXIS 25044, at *14, *16 (E.D. Va. Feb. 10, 2003) ("While those statutes regulate the assisted living facility, they *do not cover misrepresentations* made regarding those *aspects* of the facility." (emphases added)).  Thus, "authorized aspects of a consumer transaction" alluded to in the VCPA do not encompass in blanket fashion all conduct by an inspector, such as *unsanctioned* misrepresentations calculated to defraud a consumer.

The circuit court therefore erred in applying a blanket VCPA exclusion to *all* inspections, thereby incorrectly immunizing conduct of inspectors which is not authorized, such as the fraudulent certification of an inspection that has never occurred.  Whether the statutory exclusion applies to LBAS must be determined on a case-specific basis upon remand, and on the evidence, rather than by categorically exempting all inspectors from VCPA liability.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*